552 A.2d 336

Russell W. Seilhamer, Petitioner *v.* Workmen's Compensation Appeal Board (Berwind Railway Service Company), Respondents.

Submitted on briefs October 25, 1988, to Judges DOYLE and McGINLEY, and Senior Judge KALISH, sitting as a panel of three.

*Stephen D. Wicks,* for petitioner.

*James S. Routch, Evey, Routch, Black, Dorezas, Magee* & *Andrews,* for respondent, Berwind Railway Service Company.

OPINION BY JUDGE McGINLEY, December 29, 1988:

Russell W. Seilhamer (Seilhamer) appeals from a decision of the Workmen's Compensation Appeal Board (Board) affirming a decision of the Referee to suspend Workmen's Compensation Benefits pursuant to Section 413 of The Pennsylvania Workmen's Compensation Act (Act),[1] 77 P.S. §772. We affirm.

Seilhamer was employed by Berwind Railway Service Company (Employer) as a car repairman on May 11, 1982, when he suffered a work-related fracture of

---

[1] Act of June 2, 1915, P.L. 736, *as amended.*

the right hand. As a result of the injury, Seilhamer began receiving benefits pursuant to a Notice of Compensation Payable. On March 17, 1983, the Employer filed a Petition for Termination. The Referee considered the Petition as a Petition for Suspension and suspended Seilhamer's benefits. The Board affirmed the Referee's decision and Seilhamer brought the instant appeal.

Where there has been evidence presented by both parties our scope of review is limited to a determination of whether there has been a constitutional violation, an error of law or whether the findings of fact are supported by substantial evidence. *Kirkwood v. Unemployment Compensation Board of Review,* 106 Pa. Commonwealth Ct. 92, 525 A.2d 841 (1987).

Seilhamer contends that the Board erred in concluding that the Referee's decision that he could return to his previous position was based on substantial evidence.

In a proceeding to suspend or terminate workmen's compensation benefits, an employer has the burden of showing that the employee's disability has ended or been reduced and that the employee is capable of returning to work. *Carmen Paliotta General Construction v. Workmen's Compensation Appeal Board (Tribuzio),* 107 Pa. Commonwealth Ct. 143, 528 A.2d 274 (1987). Thus, the issue is whether the testimony of the Employer's medical witnesses was unequivocal and constitutes substantial evidence to support the Referee's determination that Seilhamer was able to return to work as of March 10, 1983.

The Referee's Finding No. 12 states that:

After reviewing all of the evidence of record, the Referee is persuaded by and adopts portions of the credible medical testimony of Dr. Opida and Dr. Osgood and finds as a fact that as of March 10, 1983, the claimant was able to return to his former work without restriction while suf-

fering an undetermined amount of residual disability causally related to his work-related injury of May 11, 1982.

The Referee accepted and relied upon portions of the testimony of the Employer's medical witnesses. Such credibility determinations are within the province of the Referee. *Id.* The record reveals that the testimony of these two doctors does support the Referee's finding.

Ciceron L. Opida, M.D. testified by way of deposition that he had examined Seilhamer on February 24, 1983,[2] at which time he found no clinical findings which would substantiate a finding of sympathetic dystrophy.[3] Despite this testimony, Seilhamer argues that Dr. Opida's testimony does not support the Referee's finding because Dr. Opida's conclusion was invalidated under cross-examination. Seilhamer contends that Dr. Opida admitted that positive thermographic and radiological

---

[2] Deposition of Ciceron Opida, M.D. (Opida Deposition) at 4.

[3]   Q. Okay. Let me return to the clinical findings. Were there any clinical findings to substantiate a finding of sympathetic dystrophy?

A. No, sir.

. . . .

Q. Doctor, do you have an opinion based upon a reasonable degree of medical certainty as to whether or not this individual could return to any type of employment which would involve unrestricted use of that wrist on the basis of your medical examination?

A. I did not find anything that would disable this man from doing work of any nature for that matter.

Q. In your opinion, could he return to any type of unrestricted —

A. Yes.

Q. —work and use of—and working involving the use of that right wrist?

A. Yes, sir.

Opida Deposition at 9-12.

studies would confirm the existence of reflex sympathetic dystrophy, and he notes that he introduced into evidence the results of such tests. A review of the testimony reveals that Dr. Opida considered such evidence when reaching his medical conclusion, and that he discounted its value.[4] The testimony of Carroll P. Osgood, M.D., also supports the conclusion that although Seilhamer's medical disability may not have permanent-

---

[4] Q. All right. So that, this report then would have some validity for purposes of analyzing the existence of a sympathetic dystrophy; is that correct?

A. Yes, because of the temperature discrepancy.

Q. Okay.

A. But, again, as I said, you have to have a clinical—on top of laboratory data, you have to have a clinical—added features to really diagnose a reflex sympathetic dystrophy.

Q. All right. Well, Doctor, you've given an opinion that there is no reflex sympathetic dystrophy in this case; is that correct?

A. That's right. Clinical.

Q. Clinically?

A. Yes.

Q. All right. Are you saying, then, that the results of the thermogram are results that you can and should ignore for purposes of making that decision?

A. Yes.

Q. I understood, though, earlier that when you said that, you said it because the other extremity had not been evaluated and, of course, you have corrected that. So, what is your reason now for being able to ignore the results of the thermogram?

A. Because of the absence of clinical findings—

Q. All right.

A. —which is more important than a laboratory test for this—

Q. —for this case, for this man.

Opida Deposition at 16-17.

ly ceased, it did not prevent him from returning to his employment at that time.[5]

Accordingly, the decision of the Board is affirmed.

ORDER

AND NOW, this 29th day of December, 1988, the decision of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.

---

[5] Q. Are there any pathological findings as a result of your examination which would lead you to conclude that he cannot attain full function in the use of that hand?

A. Not from my standpoint.

Q. Accordingly, did you place any restrictions on him if he were to return to a job as a repairman where he's using his hand and his arm on a daily constant basis?

A. I don't think so. I think he should just go back and try it, and see how he does.

Deposition of Carroll P. Osgood, M.D. (Osgood Deposition) at 8.