637 A.2d 711

**Patricia VOLS, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (ALPERIN, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Dec. 3, 1993.

Decided Jan. 26, 1994.

498

Edwin A. Abrahamsen and Harry T. Coleman, for petitioner.

Robert D. Schaub, for respondents Alperin, Inc. and Amguard Ins. Co.

Matthew D. Dempsey, for respondent PMA Ins. Co.

Before DOYLE and FRIEDMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Patricia Vols (Claimant) petitions for review of the order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision denying Claimant's petition for reinstatement. We affirm.

Claimant sustained an injury to her knee on April 21, 1987, while employed as a sewing machine operator with Alperin, Inc. (Employer). Benefits were paid for the period from April 23, 1987 through May 11, 1989, pursuant to a notice of compensation payable. Claimant underwent surgery on her knee in July 1987.

On February 10, 1989, Employer filed a petition to terminate benefits. In a decision dated September 19, 1989, the

referee granted a suspension of benefits effective May 11, 1989, based on availability of work.[1]

Upon receipt of the referee's decision, Claimant contacted Employer to request the job which had been offered to her in May. Claimant reported to work on September 28, 1989, but declined work after being advised that the wages for the available position were less than she had been offered in May. Claimant fell as she was leaving the office, and allegedly re-injured the same knee.

Claimant filed a petition for reinstatement October 9, 1989, alleging that her disability changed on September 28, 1989, when she was refused the job which had been offered to her in May. In its answer Employer averred that Claimant was offered work which was within her restrictions and that such work was still available. At the first hearing, Claimant agreed to return to work, and did so, on January 16th. Claimant alleges that she sustained further injury at work on January 22, 1990, and has not worked since.

During the course of further hearings, Claimant testified regarding the circumstances of her return to work in September 1989 and January 1990 and the incident on January 22, 1990, which allegedly caused additional damage to her knee, hip and back. Throughout her testimony, Claimant gave conflicting accounts of how that injury occurred.

Claimant submitted the deposition testimony of Adel R. Barakat, M.D., who first examined Claimant on June 30, 1989. Dr. Barakat testified that he concluded Claimant was unable to return to any type of work as of September 18, 1990, and that on October 30, 1990, he recommended that Claimant be declared disabled.

Anthony G. Zale, M.D., testified by deposition that he examined Claimant once in October 1990. Dr. Zale testified that Claimant's knee had never fully recovered from the 1987

---

1. Although a transcript of the May 11, 1989 hearing is not part of the record, it appears that Employer offered Claimant a modified position at a specified salary at that time. Claimant made no attempt to accept this offer until after she received the referee's decision suspending compensation.

injury, but he also stated that he "didn't find a great deal wrong with her knee at the time." (150a.)

The referee made the following pertinent findings of fact:

14.   Dr. Adel R. Barakat, M.D., a board certified orthopedic surgeon, opined that claimant suffered a lumbosacral strain when [her] knee gave out on January 22, 1990 which had disabled her from returning to her pre-injury employment. However, Dr. Barakat's opinion is premised on the history given to him by the claimant which did not contain any complaint of back pain prior to January 22, 1990.   Dr. Barakat further opined that x-rays and an MRI of the claimant's back were within normal parameters.   A review of the limited positive findings found on Dr. Barakat's repeated physical examinations, compared with claimant's constant complaints of severe pain, reveals that Dr. Barakat's restrictions on claimant's return to work are largely based on claimant's subjective complaints of pain.

15.   Anthony G. Zale, M.D., an orthopedic surgeon who examined the claimant on one occasion ... opined that claimant's injury in January 1990 was a recurrence of her injury from April 1987.   Dr. Zale's opinion, however, was based in part on the history provided to him by the claimant.

16.   This Referee has listened to the testimony presented, observed the character and demeanor of the witnesses, in particular that of the claimant, and after careful review of all of the evidence of record, finds the claimant's testimony not credible and accepts the testimony of Jane Alperin as credible.[2]   Since the medical testimony is premised on the credibility of the history provided to the doctor by the claimant, and this Referee rejected the claimant's testimony as not credible, this Referee likewise rejects the findings and opinions of both Dr. Barakat and Dr. Zale which were based on the claimant's unreliable history.   Therefore this

**2.**   Ms. Alperin is an owner and Human Resources Director with Employer.   Her testimony was limited to the question of whether a photograph submitted by Claimant accurately depicted the chair provided to Claimant upon her return to work in January 1990.

Referee finds that the claimant did not suffer either a new work related injury or a recurrence of her prior April 1987 injury in January of 1990. This Referee further finds that claimant's attempts to return to work in September 1989 and January 1990 were not made in good faith but rather were an attempt to have her workers' compensation benefits reinstated. Claimant's reinstatement petition should be denied and dismissed.

(165a.) The Board affirmed the referee's decision.

Claimant raises two issues on appeal:[3] (1) whether Claimant is entitled to reinstatement of benefits based on Employer's offer of a tailor-made job and subsequent withdrawal of that offer and (2) whether Claimant produced substantial, competent evidence that she suffered a recurrence of her disability on January 22, 1990.

■■■■ A claimant seeking reinstatement of benefits must establish that the reasons for the suspension no longer exist. *Pieper v. Ametek–Thermox Instruments,* 526 Pa. 25, 584 A.2d 301 (1990). The claimant must prove that the disability which gave rise to her original claim continues, and that her earning power is again adversely affected by her disability, through no fault of her own. *Id.* Here Claimant argues that Employer's withdrawal of the May offer for a job at a stated salary negates the referee's basis for suspending her benefits.

■■■■ When an employer presents an offer for a job which is tailored to the claimant's abilities, the claimant must make a good faith effort to return to work; if a claimant refuses a valid job offer her benefits can be modified. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987). An employer is not required to keep a job open indefinitely, waiting for the

---

**3.** Our scope of review in a workmen's compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

claimant to decide when to return to work. *Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick)*, 149 Pa.Commonwealth Ct. 362, 614 A.2d 779 (1992), *petition for allowance of appeal denied*, 533 Pa. 654, 624 A.2d 112 (1993).

In *Spinabelli*, the employer filed a petition for modification or suspension of benefits, alleging that it had offered the claimant positions within his physical restrictions, but that the claimant had refused such employment. The referee modified benefits after finding that the employer had offered the claimant suitable jobs in February of 1983 and July of 1984 and that the claimant had refused both positions. On May 29, 1986, approximately one month after the referee issued his decision, the claimant filed a reinstatement petition alleging that no light duty work was available to him when he attempted to return to work on May 21, 1986. The referee reinstated benefits, but the Board reversed, concluding that the claimant had to prove a change in his physical condition in order for benefits to be reinstated. This Court affirmed the Board's decision noting that the claimant's loss of earning power was not due to his disability but rather to his lack of good faith in pursuing work within his limitations which was made available to him.

Claimant attempts to distinguish this case from *Spinabelli* based on her timely response to the referee's decision, but Claimant's response to the initial offer of work is the determinative factor. The fact that the job was no longer available at the same wages several months later is not relevant. Claimant did not request the position until after she received the referee's decision. She failed to make a good faith attempt to return to work at the time the offer was made; as Employer was not obliged to keep the offer open indefinitely, Claimant cannot rely on the withdrawal of that offer to establish that a reason for her suspension no longer exists.

Claimant also failed to meet her burden of proving that she could no longer perform the job offered to her. Claimant argues that there was substantial evidence to support a finding that she suffered a recurrence of her disability on January

22, 1990[4]. But Claimant's own account of the alleged incident varied with each telling, and Claimant presented no other evidence to corroborate her allegation that the incident actually occurred. While both medical experts testified that Claimant was to some extent disabled, the referee rejected that testimony. In his Finding of Fact 16, the referee states that he found Claimant's testimony not credible, and that he rejected the testimony of both medical experts after determining that their opinions were based on Claimant's own accounts of the alleged recurrence and were not supported by test results or physical examinations.

Claimant contends that the referee erred in rejecting her testimony and the opinions of both medical experts. Where, as here, the Board takes no additional evidence, the referee is the final arbiter of credibility and the weight of the evidence. *Butler v. Workmen's Compensation Appeal Board,* 67 Pa.Commonwealth Ct. 393, 447 A.2d 683 (1982). The referee may accept or reject, in whole or in part, any testimony of any witness. *Mrs. Smith's Frozen Food Co. v. Workmen's Compensation Appeal Board (Clouser),* 114 Pa.Commonwealth Ct. 382, 539 A.2d 11 (1988). After finding Claimant's testimony not credible, the referee properly rejected the physicians' testimony, because it was premised on the medical history provided to the doctors by Claimant.

The Board correctly relied on the preceding analysis in affirming the referee's decision.[5] Claimant failed to prove by substantial, competent evidence that work which she could perform was no longer available to her, or that she had suffered a recurrence of her initial injury. Accordingly, the order of the Board is affirmed.

**4.** As we affirm the Board's denial of compensation, we need not address the question of whether the incident on September 28, 1989, or the incident which allegedly occurred January 22, 1990, constituted a new injury or an aggravation of the initial injury.

**5.** Although the Board states that the referee's decision is supported by substantial, competent evidence, it is actually the lack of such evidence which defeats Claimant's petition.

## ORDER

NOW, January 26, 1994, the order of the Workmen's Compensation Appeal Board, dated June 30, 1993, at A92–1043, is affirmed.