**HYMAN S. CAPLAN PAVILION and The PMA Group, Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (DULLE-BAWN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 12, 1999.

Decided July 14, 1999.

---

Michael R. Bonshock, Harrisburg, for petitioners.

Drew P. Gannon, Harrisburg, for respondent.

Before McGINLEY, J., FLAHERTY, J., and RODGERS, Senior Judge.

FLAHERTY, Judge.

The Hyman S. Caplan Pavilion and the PMA Group (collectively, Employer) appeal from an order of the Workers' Compensation Appeal Board (Board) which reversed the decision of the Workers' Compensation Judge (WCJ) granting Employer's suspension petition but affirming the WCJ's decision granting Employer's modification petition, and granting the penalty petition filed by Margaret Dullebawn (Claimant). We affirm in part and reverse in part.

Claimant sustained a work-related injury in the nature of a lumbar strain on October 27, 1993. Thereafter Claimant received benefits pursuant to a notice of compensation payable issued by Employer. On December 18, 1995 Employer filed a suspension/modification petition alleging that as of December 15, 1995, Claimant was capable of performing full-time light-duty work and such a position was available at Employer's place of business. Claimant filed an answer alleging that she was unable to perform the job offered to her by Employer. On March 21, 1996, Claimant filed a petition to reinstate benefits alleging that she was compelled to

resign from her light-duty position due to continuing disability caused by her work-related injury and also filed a penalty petition alleging that Employer ceased paying benefits as of October 10, 1995 in the absence of a supplemental agreement. The petitions were consolidated and a hearing was held before the WCJ wherein Claimant withdrew her reinstatement petition and Employer amended its petition to change the date of requested suspension/modification from December 15, 1995 to September 5, 1995.

At the WCJ's hearing, Employer presented the deposition testimony of Dr. Steven Morganstein, which was taken on April 22, 1996. He testified that Claimant was referred to him for follow up care after she underwent a decompression laminectomy. His initial examination of August 29, 1995 revealed that Claimant had post-laminectomy or muscle tightness and deconditioning after surgery. He concluded that Claimant was capable of returning to sedentary type work for four hours a day.

Dr. Morganstein again examined Claimant on September 26, 1995 at which time Claimant complained of low back and neck pain. After his examination, Dr. Morganstein still believed that Claimant was capable of performing a sedentary position for four hours per day. He testified that the cashier/aide job, which Employer made available, was appropriate for Claimant to eventually resume on a full-time basis. Dr. Morganstein testified that he expected that Claimant could perform the cashier/aide position on a full-time basis by mid-November, 1995. Dr. Morganstein last saw Claimant on October 6, 1995, and gave the opinion that Claimant had the same capabilities that she had on August 29, 1995.

Jean Walker, Employer's witness, testified that the cashier/aide job consisted of operating the cash register and assisting in light food preparation. Claimant was provided a chair that was adjustable in height and included a back support, and was advised that she could perform the job either sitting or standing. Walker testified that Claimant performed the light-duty job as cashier/aide 10:30 a.m. to 3:00 p.m., with a half-hour lunch break, from September 5, 1995 through September 15, 1995. Another one of Employer's witnesses, Georgia Brandt, testified that at the time of the hearing, the part-time cashier/aide position continued to be available to Claimant and that the position would have been made available to her on a full-time basis.

Claimant testified that she attempted the cashier/aide position for two weeks from September 5, 1995 to September 15, 1995, but began experiencing back and shoulder pain, leg numbness and headaches. She reported her symptoms to Dr. Morganstein who took her off work from September 19, 1995 to October 6, 1995. She further testified that she tendered her resignation on October 11, 1995 informing her Employer that she was resigning due to pain in her back and that she planned to start a day care center in her home. In January, 1996, Claimant started a day care center in her home. Records kept by Claimant and introduced at the WCJ's hearing show that Claimant earned income beginning the first week of January. Claimant stated that she has taken care of five children on a full-time basis ranging in age from 16 months to 4 years; however she no longer cares for the 16–month old. Claimant testified that although she holds the children and has them sit in her lap, she does not pick them up. In addition to operating a day care center, Claimant testified that she does household chores including making beds and laundry.

The WCJ credited the testimony of Dr. Morganstein and Employer's witnesses. He concluded that Claimant was capable of performing the cashier/aide job on November 15, 1995. Although Dr. Morganstein last saw Claimant on October 6, 1995 and did not see Claimant in November of 1995, through his testimony taken on April 22, 1996, Dr. Morganstein indicated that, because Claimant was performing day care

services for eight hours per day beginning in January, she could have worked at the cashier/aide position for eight hours per day as of the middle of November. As such, the WCJ modified Claimant's benefits to partial disability effective September 5, 1995. The WCJ then reinstated Claimant's benefits to temporary total disability from September 19, 1995 through October 5, 1995. Claimant's benefits were again reduced to partial disability effective October 6, 1995. In addition, the WCJ suspended Claimant's partial disability benefits effective November 15, 1995 based on the availability of the full-time cashier/aide position available with Employer. The WCJ also granted Claimant's penalty petition.

On appeal, the Board reversed the WCJ's suspension of Claimant's benefits effective November 15, 1995 concluding that the opinion of Dr. Morganstein that Claimant would have been physically capable of returning to work as a full-time cashier/aide in mid-November was speculative. The Board affirmed the WCJ in all other respects.

Here, the issue raised by Employer is whether the testimony of Dr. Morganstein constituted substantial competent evidence to support a suspension of Claimant's benefits as of November 15, 1995.

■ Initially, we observe that to suspend benefits, the employer has the burden of proving that the employee's physical disability has been reduced and that the employee is capable of returning to work. *Seilhamer v. Workmen's Compensation Appeal Board (Berwind Railway Service Company)*, 122 Pa.Cmwlth. 410, 552 A.2d 336 (1988). In this case, Employer produced the medical testimony of Dr. Morganstein. Dr. Morganstein last examined Claimant on October 6, 1995. Based on that examination, he opined that Claimant could work a four hour day and that he planned on gradually increasing her hours to a full eight hour day. He specifically stated that by mid-November "it would have been expected that she would be able

to do this position [cashier/aide] for eight hours a day." (R.R. at 146.) When questioned by Claimant's counsel, Dr. Morganstein further testified:

Q. So when you previously indicated that it had been your overall plan to get her back to work eight hours a day in six to eight weeks, that was just your plan correct?

A. The plan and based on previous experience, and, again, with a reasonable degree of medical certainty, the course of expected improvement based on the type of work she was doing and the expected outcome from her therapy.

(R.R. at 153.)

Employer maintains that this testimony by Dr. Morganstein constitutes competent credible evidence, which was accepted by the WCJ, and constitutes sufficient evidence to support the WCJ's suspension of Claimant's benefits as of November 15, 1995. However, we agree with the Board that Dr. Morganstein's testimony that Claimant should have been able to return to the cashier/aide position on a full-time basis in mid-November was speculative.

In *Macaluso v. Workmen's Compensation Appeal Board (Philadelphia College of Osteopathic Medicine)*, 142 Pa.Cmwlth. 436, 597 A.2d 730 (1991), the WCJ found that the claimant had fully recovered from his work related injury on July 13, 1981. This court determined however, that the testimony of the employer's medical witnesses did not support this finding. In that case, the doctor testified that the claimant's injury should have resolved itself within four months of the date of injury which was April 6, 1981. However, the doctor did not examine the claimant until seven months after the WCJ's finding of full recovery. "None of Dr. Gross's testimony indicated that Mr. Macaluso [the claimant] had fully recovered on July 13, 1981...." *Id.* at 732. This court determined that a medical witnesses' testimony that the claimant should have recovered by

a given date was not sufficient evidence upon which to base a finding.

■ As was the case in *Macaluso*, there is no testimony by the doctor in this case that Claimant had in fact recovered as of November 15, 1995. Like *Macaluso*, Employer's medical expert merely stated that Claimant should have been able to work full-time as a cashier/aide within four to six weeks. Here, Dr. Morganstein's testimony that "it would have been expected" that Claimant would have been able to perform the cashier/aide petition eight hours a day by mid-November is insufficient to support a finding that as of mid-November Claimant in fact was able to perform the cashier/aide position eight hours a day. As testified to by Dr. Morganstein, Claimant's "expected" performance was based on Claimant's "*expected* improvement based on the type of work she was doing and the *expected* outcome of her recovery." (emphasis added)(R.R. at 153.) Dr. Morganstein's "expectations" are based on an assumed course of events of which Dr. Morganstein could have no knowledge. Moreover, although Claimant started a day care center in her home in January 1996, her physical capabilities as of then have no necessary bearing on her physical abilities as of November 15, 1995.

Employer's reliance on *Brodbeck v. Workmen's Compensation Appeal Board (Preston Trucking Co.)*, 76 Pa.Cmwlth. 372, 463 A.2d 1280 (1983) is misplaced. In *Brodbeck*, the claimant suffered a work-related neck injury and received benefits. The employer thereafter filed a termination petition which was later amended to a petition to modify. Employer's physician, Dr. Byron, conducted an examination of the Claimant's psychiatric status. Before the physician's testimony, but after the examination, the claimant attempted suicide. The WCJ relied on Dr. Byron's testimony in finding that the claimant's mental status did not prevent him from returning to his former job. The claimant argued to this court that Dr. Byron's testimony was not competent because his ex-amination of the claimant preceded the claimant's suicide attempt. We held that the doctor's failure to examine the claimant after the suicide attempt went to the doctor's credibility, not his competency. Unlike the present case, wherein Dr. Morganstein assumed a course of anticipated recovery, Dr. Byron did not speculate as to future events. Dr. Byron did not state that "it would have been expected" that the claimant would have been able to return to work at some future date. Rather, he stated that the claimant's psychiatric status did not prevent the claimant from returning to work.

Similarly, the case of *Kroger Co. v. Workmen's Compensation Appeal Board (Nicola)*, 101 Pa.Cmwlth. 629, 516 A.2d 1335 (1986) is also distinguishable. In that case, the WCJ credited the testimony of a doctor who did not examine the claimant. The doctor therein relied on testimony of the claimant, and deposition testimony of two other doctors in opining that the claimant suffered a continuation of her original injury. On appeal, the employer argued that the doctor's testimony constituted hearsay and was incapable of supporting a finding because he did not examine the claimant. This court determined however, that "[a]n expert's medical opinion as to causation may be based upon facts gleaned by reading the record testimony rather than upon an actual physical examination of the claimant.... Failure to conduct a physical examination does not go to a medical witness' competency; rather, it goes to his credibility." *Id.* at 1337.

In *Kroger* the doctor testified as to facts in the record. Here, Dr. Morganstein testified as to Claimant's future status on an assumed course of events of which Dr. Morganstein could not have knowledge.

Although we agree with the Board that Dr. Morganstein's testimony that Claimant should have been able to perform the cashier/aide position in November was speculative, and therefore benefits should not be suspended as of then, benefits should be suspended as of January 1, 1996. This is

so because Claimant at that time was operating a day care center and Dr. Morganstein testified that watching two to four year olds which requires bending, lifting and carrying, would certainly be more demanding than the cashier/aide position. (R.R. at 159a.) As one of Employer's witnesses credibly testified that the cashier/aide position continued to be available, and Dr. Morganstein testified that the demands of operating a day care center would be physically more strenuous than that of the cashier position, and Claimant has chosen to operate a day care center, Claimant's benefits should be suspended as of January 1, 1996, as the job offered to her by Employer would have paid her more than her pre-injury wage.

■ Although there was no medical evidence establishing that Claimant's disability had decreased such that she could perform the cashier/aide job on a full-time basis in January of 1996, Claimant was operating a day care center in January and Dr. Morganstein testified and the WCJ found that operating a day care center is physically more demanding than working as a cashier/aide. "There is no requirement that an employer establish that a claimant's physical condition had changed in order to meet its burden of proving that the claimant's disability decreased.... [A] physician's testimony that a claimant was able to work with certain restrictions [is] sufficient under *Kachinski [v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987).]" [1] *Kurtiak v. Workmen's Compensation Appeal Board (Western Sizzlin' Steak House)*, 160 Pa.Cmwlth. 637, 635 A.2d 732, 736 (1993), *petition for allowance of appeal denied*, 540 Pa. 643, 659 A.2d 561 (1995). Here, as Dr. Morganstein testified that operating a day care center is physically more demanding than working as a cashier/aide, Claimant's benefits should be suspended as of January 1, 1996, when she opted to run a day care center rather than work for Employer, at no wage loss as a cashier/aide. In essence, the thrust of Dr. Morganstein's testimony is that any physical disability which would have prevented Claimant from performing the less physical cashier/aide job ceased as of January 1, 1996, when Claimant was performing the more physical job of operating a day care center.

■ Claimant remained partially disabled as a result of her work-related injury so long as her earning power was less than her pre-injury wage. *IGA Food Mart v. Workmen's Compensation Appeal Board (Kugler)*, 674 A.2d 359, 363 (Pa.Cmwlth. 1996), *petition for allowance of appeal denied*, 546 Pa. 649, 683 A.2d 886 (1996). Claimant's failure to accept an offer of employment which would have returned her to her pre-injury earning capacity entitles Employer to a suspension of benefits. *Id.* Because Claimant started a day care center on January 1, 1996, and Dr. Morganstein testified that operating a day care center is physically more demanding than working as a cashier/aide, Claimant's benefits are suspended as of January 1, 1996, the day when Claimant returned to a job more physically demanding than the cashier/aide job rather than November 15, 1995, when it was only speculated that Claimant could return to the cashier/aide job.[2]

1. Under *Kachinski,* when an employer seeks to modify benefits, it is employer's burden to show that the claimant's disability has decreased. This burden is satisfied when the employer shows that the claimant's condition has changed and that work is available which the claimant can perform. Once the employer meets this burden, the claimant has the burden of establishing a good faith follow through on the job referrals. *Kurtiak* 635 A.2d at 735.

2. In *Carpentertown Coal & Coke Co. v. Workmen's Compensation Appeal Board (Seybert),* 154 Pa.Cmwlth. 408, 623 A.2d 955 (1993), *petition for allowance of appeal denied,* 535 Pa. 640, 631 A.2d 1011 (1993), this court affirmed the Board's award of benefits but also sua sponte directed the suspension of the claimant's benefits. *See also, Brown v. Workmen's Compensation Appeal Board (City of Pittsburgh),* 134 Pa.Cmwlth. 31, 578 A.2d 69 (1990), *petition for allowance of appeal denied,*

Accordingly, the order of the Board reversing the WCJ's suspension of benefits is reversed. Claimant's benefits are suspended as of January 1, 1996. The order of the Board is affirmed in all other respects.

## *O R D E R*

NOW, July 14, 1999, the order of the Worker's Compensation Appeal Board at No. 97–2921, dated October 7, 1998, is reversed to the extent that it reversed the WCJ's order suspending Claimant's benefits. Claimant's benefits are suspended as of January 1, 1996. The Board's order is affirmed in all other respects.

527 Pa. 652, 593 A.2d 423 (1991), wherein this court reversed the entry of a termination order and sua sponte ordered a suspension of the claimant's benefits.