PENNSYLVANIA UNINSURED EMPLOYERS GUARANTY FUND, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (BONNER and Fitzgerald), Respondents.

Commonwealth Court of Pennsylvania.

Argued Nov. 12, 2013.

Decided Feb. 12, 2014.

Carl J. Smith, Jr., Pittsburgh, for petitioner.

Michael S. Russell, Pittsburgh, for respondent Gerald Bonner.

BEFORE: LEADBETTER, Judge, McCULLOUGH, Judge (P.), and COLINS, Senior Judge.

OPINION BY Judge McCULLOUGH.

The Pennsylvania Uninsured Employers Guaranty Fund (Fund) petitions for review of the February 4, 2013 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting Gerald Edward Bonner's (Claimant) claim petition and directing the Fund to pay Claimant's total disability compensation. We affirm.

Anthony Fitzgerald (Employer) employed Claimant as a laborer on March 16, 2009. Claimant was to be paid $10.00 per hour, working eight to twelve hours per day, five to six days per week. That same day, while tearing off a roof under Employer's direction, Claimant fell from the roof and landed on a cement slab. Claimant suffered a seizure and was taken to the hospital. He was placed in a drug-induced coma for approximately one week and diagnosed with a skull fracture, seizures, and a left eye injury. Thereafter, Claimant received treatment from a neurosurgeon and from a psychologist, Michael W. Collins, Ph.D. (Dr. Collins), at the University of Pittsburgh Medical Center Concussion Clinic. (WCJ's Findings of Fact Nos. 1a–c, 2b.)

On May 12, 2009, Claimant filed a claim petition against Employer. On July 7, 2009, Claimant filed a claim petition seeking benefits from the Fund because Employer was uninsured.[1] The Fund denied all of Claimant's allegations in its answer. (Reproduced Record (R.R.) at 7a–8a, 13a–14a, 16a–17a.)

The matter was assigned to a WCJ who held multiple hearings. Employer did not attend. Claimant appeared before the WCJ on August 18, 2009, and testified to the facts set forth above. Claimant described the job of tearing off the roof and stated that he placed a piece of plywood on top of supporting beams to provide a platform on which to stand. Claimant testified that he informed Employer that one of the beams was dry-rotted and could not support him, but Employer assured Claimant that it would. Claimant stated that he remembered sliding the plywood over the dry-rotted beam and standing on it, and his next memory was waking up in a hospital. (R.R. at 60a–62a.)

Claimant testified that he continues to experience headaches, difficulty with his balance, and pain in his left eye. Claimant did not believe he could go back to work, especially if it entailed climbing. (R.R. at 63a–66a.)

Claimant presented the deposition testimony of Dr. Collins. Dr. Collins maintains an active practice that focuses on the assessment, management, and treatment of patients who sustained concussions or mild traumatic brain injuries. (WCJ's Finding of Fact No. 2a.) He testified that he first saw Claimant on May 27, 2009, and determined that Claimant had a mild traumatic brain injury. (WCJ's Finding of Fact No. 2b; R.R. at 199a.) Dr. Collins understood that two months before Claimant's first

visit, he fell approximately twelve feet while working for Employer and struck his head. Dr. Collins testified that during Claimant's first visit Claimant complained of significant pressure headaches behind his left eye, blurred vision in that eye, fatigue, and short-term memory problems and that he also experienced episodes of losing consciousness. Dr. Collins determined that Claimant's complaints were symptomatic of a concussion or mild traumatic brain injury. (WCJ's Findings of Fact Nos. 2b–c.)

Dr. Collins performed neuropsychological testing on Claimant on July 15, 2009, which showed mild deficits from a neurocognitive perspective that were consistent with mild traumatic brain injury. Dr. Collins also stated that he reviewed a CT scan that confirmed a left frontal area brain injury, which is the area involved in learning, memory, and executive functioning—the same deficits revealed during all of Dr. Collins's tests on Claimant. (WCJ's Finding of Fact No. 2d.) Dr. Collins further testified as follows:

A. I felt his diagnosis was consistent with mild—actually moderate traumatic brain injury.... I felt he was a very good candidate for a neurostimulant.... I felt it would help [Claimant's] headaches and other post-concussive symptoms that not only included headache.

And that's something you have to understand. This wasn't just headache. This was a lot of fatigue. There were a lot of cognitive problems. There was a lot of dizziness, disequilibrium, photosensitivity, photophobia. There's a lot of symptoms that go into, you know, concussion and traumatic brain injury more than just headache.

---

1. Because two claim petitions were filed, two claim numbers and subsequently two appeal numbers were assigned. The Board adjudi-cated both of these identical appeals in its opinion and order.

But regardless, the symptoms that he was experiencing, I felt were at least moderate in nature and quite incapacitating for him. . . .

So I recommended he visit with Dr. Camiolo, who is a physical medicine and rehab specialist, who specializes in treating traumatic brain injury. And it's my understanding [Claimant] went to Dr. Camiolo, was prescribed [the neurostimulant] and did very well on the medication. Actually improved quite a bit on his symptoms.

Q. It looks like you last saw [Claimant] November 25, 2009; correct?

A. That's correct.

Q. How is he doing as of November 25, 2009?

A. He was still having headaches that were not present before the trauma. And in my notes, there [sic] were a couple times a week, but the severity of which would rate up to around an eight on a ten scale, which is quite significant. He was reporting that his cognitive functioning he felt to be about 80 percent back to normal, not quite normal. He also reported fatigue, photosensitivity and photophobia.

(R.R. at 202a–04a.)

Claimant did not return for additional appointments that had been scheduled for him. Dr. Collins's final diagnosis of Claimant was that he sustained a moderate traumatic brain injury in a work-related accident in 2009 and that he was unable to return to work as a laborer as of his last examination on November 25, 2009. (WCJ's Findings of Fact Nos. 2f–h.) On cross-examination, Dr. Collins dismissed the suggestion that Claimant's symptoms were causally related to a learning disability and/or alleged drug abuse. He stated that he scheduled a follow-up appointment with Claimant within six weeks after his last visit. Dr. Collins testified that the medication he prescribed for Claimant had been working well, and he had recommended that Claimant continue them for another month. Dr. Collins believed that Claimant's condition would continue to improve and he anticipated that Claimant would be able to return to work in six weeks, pending test results to confirm that his deficits had improved. (R.R. at 210a–14a.)

The Fund presented the deposition testimony of Richard Bruce Kasdan, M.D. (Dr. Kasdan),[2] which the WCJ summarized as follows:

a. He performed an Independent Medical Examination[3] of the claimant on February 22, 2010 at the defendant's request.

b. He confirmed the claimant sustained a skull fracture, a left orbital fracture, and a closed head injury with subdural hematoma when he fell through a roof on March 16, 2009. The claimant advised him that his chief ongoing complaint is a daily headache that he did not experience prior to the injury.

2. The WCJ failed to identify Dr. Kasdan's deposition as an exhibit, but the WCJ discusses his testimony in Finding of Fact No. 3. Further, on April 24, 2013, the parties filed a stipulation for correction of the record with this Court to include the transcript of Dr. Kasdan's deposition in the reproduced record.

3. As a result of the independent medical examination, the Fund sent Claimant a notice of ability to return to work (NARW) dated November 5, 2010. (R.R. at 279a.) Section 306(b)(3) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512(3), requires an employer to provide a NARW as a prerequisite to seeking a modification or suspension of benefits.

c. His examination of the claimant was within normal limits. He confirmed that an August 2009 brain MRI showed a residual contusion which could cause him some mental status problems, but he opined that there was no edema, mass effect, and no pressure; therefore, the contusion was not the source of his headaches.

d. He did not recommend any further treatment or preventative seizure medication and opined the claimant was able to return to full time light duty work levels. He clarified that relative to his brain contusion injury the claimant did not have any restrictions, that he has other medical problems, unrelated to the work injury, that prevent him from working full regular duty.

(WCJ's Findings of Fact Nos. 3a–d.)

By decision and order dated June 9, 2011, the WCJ granted the claim petition and directed the Fund to pay Claimant's total disability compensation, noting that the liability of the Fund is second to Employer's. The WCJ accepted the testimony of Claimant and Dr. Collins as credible and persuasive. The WCJ found that Claimant was an employee of Employer at the time of his fall, he earned an average weekly wage of $400.00, and he had not fully recovered from his work injuries. The WCJ found Dr. Kasdan's testimony credible and persuasive to the extent that he confirmed Claimant's work injuries. However, the WCJ rejected Dr. Kasdan's testimony that the medication Claimant receives is unwarranted, the headaches are not related to his work injury, Claimant is able to return to work, and Claimant is no longer limited by the work injury. The WCJ concluded that Claimant's work injury prevents Claimant from returning to work as a laborer. (WCJ's op. at 2–5.)

Specifically, the WCJ found that Claimant testified as follows:

[Claimant] continues to experience headaches at different times. Sometimes, when he turns his head a certain way, he will get a headache. He also has difficulty with his balance and has pain behind his left eye. He has not experienced a seizure in a while. He did not feel he was capable of returning to his pre-injury work, especially if it entailed climbing.

(WCJ's op. at 2e.) In regard to Claimant's testimony, the WCJ stated as follows:

I find [C]laimant testified in a credible and persuasive manner that he suffered serious injuries when he fell through a roof in March 2009 while working for Mr. Fitzgerald. He required medical treatment for his injuries and continues to experience difficulties and limitations from his injuries. [C]laimant's testimony is clear that Mr. Fitzgerald recruited him to work as a laborer, instructed him as to how he should perform the work on the roof, and agreed to pay him wages for the work he performed.

(WCJ's op. at 2.)

The Fund appealed to the Board, arguing that the WCJ's findings concerning Claimant's average weekly wage and Claimant's ongoing disability were not supported by substantial evidence. However, the Board concluded that Claimant's unrebutted testimony constituted substantial evidence to support the WCJ's finding that Claimant's earnings were $400.00 per week. The Board further noted that the WCJ found Dr. Collins's testimony credible and persuasive and has the authority to do so as the ultimate fact-finder. The Board concluded that Dr. Collins's testimony provided substantial evidence to support the WCJ's finding that Claimant's

disability extended beyond November 25, 2009. (Board op. at 1–4.) By opinion and order dated February 4, 2013, the Board affirmed the WCJ's order.

On appeal to this Court,[4] the Fund argues that the WCJ erred in granting the claim petition. Relying on *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 166 Pa.Cmwlth. 141, 646 A.2d 51 (1994), *appeal denied*, 541 Pa. 645, 663 A.2d 696 (1995), the Fund asserts that, because Dr. Collins could not comment on Claimant's status after November 25, 2009, his testimony does not constitute substantial evidence of ongoing disability.

In *Innovative Spaces*, the claimant offered the deposition testimony of Nicholas M. Renzi, M.D. (Dr. Renzi), whose medical records for the claimant ended on June 6, 1988. Dr. Renzi stated that he could only testify that the claimant could not return to work as of that date. The employer offered the deposition testimony of John R. Duda, M.D. (Dr. Duda), who examined the claimant on July 24, 1989, and opined that the claimant had fully recovered from his work-related injury. The employer also presented the testimony of John Shockley, who stated that the claimant worked for him as a carpenter and laborer from August 19, 1988, until October 7, 1988, when the claimant's employment was terminated because he lacked the necessary job skills.

The referee[5] specifically rejected the testimony of Dr. Renzi as evidence of on-going disability and accepted the opinion of Dr. Duda. After considering all of the evidence presented, the referee determined that the claimant was disabled from April 19, 1988, until June 6, 1988, and granted the claim petition for that closed period. The claimant appealed to the Board, which amended the referee's decision to reflect a July 24, 1989 termination date.

On appeal, this Court reversed the Board's decision. Relying on *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993), we held that the burden of proof is on the claimant to "demonstrate not only that he has sustained a compensable injury but also that the injury continues to cause disability throughout the pendency of the claim petition...." *Id.* at 54. We held that the claimant failed to meet this burden, specifically because the WCJ rejected the testimony of Dr. Renzi. We also held that "in deciding a claim petition, a referee must be free to determine the chronological length of the disability if for good reasons he disbelieves a claimant's medical witness." *Id.* at 55. We noted that, through Shockley's testimony, it was also shown that the claimant returned to work on August 19, 1988, until October 7, 1998, and left work for reasons other than disability. Based on the evidence before the referee at the time of the decision, we concluded that the claimant failed to carry his burden of proving ongoing disability.

As *Innovative Spaces* provides, in a claim proceeding the burden is on the

---

**4.** Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Substantial evidence is such evidence as a reasonable mind might find adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workers' Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 292, 612 A.2d 434, 436 (1992).

**5.** At the time of *Innovative Spaces*, WCJs were known as referees.

claimant to establish a right to compensation and prove all necessary elements to support an award, including the burden to establish the duration and extent of disability. *Id.* at 54; *see also Inglis House,* 535 Pa. at 141, 634 A.2d at 595. However, it is a fundamental principle of workers' compensation law that the WCJ is the final arbiter of witness credibility and evidentiary weight. *Hoang v. Workers' Compensation Appeal Board (Howmet Aluminum Casting, Inc.),* 51 A.3d 905, 909 n. 7 (Pa. Cmwlth.2012); *Vols v. Workmen's Compensation Appeal Board (Alperin, Inc.),* 161 Pa.Cmwlth. 497, 637 A.2d 711, 714 (1994).[6] The WCJ may accept or reject, in whole or in part, the testimony of any witness. *Id.* Moreover, the WCJ's fact-finding authority includes the authority to draw reasonable inferences from the evidence. *General Electric Company v. Workmen's Compensation Appeal Board (Valsamaki),* 140 Pa.Cmwlth. 461, 593 A.2d 921, 924 (1991) ("[I]t is clearly within the referee's fact-finding province to draw reasonable inferences from the evidence." (citing *Oscar Mayer & Company v. Workmen's Compensation Appeal Board (Manzi),* 65 Pa.Cmwlth. 514, 442 A.2d 1238 (1982))).[7] A WCJ's credibility and evidentiary determinations are binding on appeal unless made arbitrarily and capriciously. *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.),* 962 A.2d 14, 19 (Pa.Cmwlth.2008).[8] The evidence, and the reasonable inferences deducible therefrom, must be viewed in the light most favorable to the prevailing party below. *Glass v. Workers' Compensation Appeal Board (City of Philadelphia),* 61 A.3d 318, 325 n. 4 (Pa.Cmwlth.2013).

■ In contrast to the circumstances in *Innovative Spaces,* in this case the WCJ

---

6. In *Vols,* the claimant petitioned for reinstatement of her benefits. Following a hearing, the referee found the claimant's testimony and the testimony of her medical experts that she had not fully recovered from her work-related injury not credible and denied her reinstatement petition. The Board affirmed. On appeal to this Court, we noted that the referee is free to accept or reject, in whole or in part, the testimony of any witness, and we agreed with the Board that the claimant failed to meet her burden of proof.

7. In *General Electric,* the referee awarded the claimant total disability benefits. The referee accepted as credible the claimant's testimony and the testimony of claimant's medical expert that the claimant could no longer perform his work duties. The Board affirmed. On appeal to this Court, the employer argued that the claimant failed to establish a causal connection between his disability and his inability to continue working. We affirmed the Board's order, noting that the referee is the ultimate arbiter of credibility and is free to draw any reasonable inferences from the evidence.

8. In *Casne,* the employer filed a termination petition based on the results of an independent medical examination (IME). At a hearing on the petition, the employer offered the testimony of the IME doctor. In defense of the petition, the claimant offered his own testimony and testimony of a medical expert witness. The WCJ credited the testimony of the employer's medical witness over that of the claimant's and found the claimant credible only in part. Thus, the WCJ granted the termination petition, and the Board affirmed.

On appeal to this Court, we affirmed the Board's order. We concluded that the credible testimony of the employer's medical expert constituted substantial evidence to support the WCJ's decision, noting that "[a] reviewing court does not reweigh the evidence or determine credibility...." *Id.* at 17. We also concluded that deference was due to the WCJ's finding that the claimant's testimony was not credible in part. We stated that "[w]e must view the reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Id.* at 19.

specifically rejected the opinion of the Fund's medical witness and accepted the opinion of Claimant and Claimant's medical witness. Both Claimant and Dr. Collins testified that Claimant sustained a work injury and experienced ongoing limitations as a result, and the Fund did not present any credible evidence rebutting their testimony. This Court has previously held that "a claimant's medical expert is not required to be an eyewitness to the claimant's disability throughout the pendency of a claim petition[,]" *YDC New Castle–PA DPW v. Workers' Compensation Appeal Board,* 950 A.2d 1107, 1112 (Pa.Cmwlth.2008), and that a WCJ is free to rely on a claimant's testimony in determining the chronological length of disability. *Id. See also American Contracting Enterprises, Inc. v. Workers' Compensation Appeal Board (Hurley),* 789 A.2d 391, 398 (Pa.Cmwlth.2001);[9] *Ricks v. Workers' Compensation Appeal Board (Parkway Corporation),* 704 A.2d 716, 719 (Pa. Cmwlth.1997);[10] *Innovative Spaces,* 646 A.2d at 55. Here, Claimant credibly testified that his ongoing disability prevents him from returning to work, and the WCJ properly relied on this testimony in awarding Claimant total disability benefits.

■ Although Dr. Collins anticipated that Claimant would be able to return to work, the WCJ correctly declined to suspend Claimant's benefits based on his speculation. *See Hyman S. Caplan Pavilion v. Workers' Compensation Appeal Board (Dullebawn),* 735 A.2d 147 (Pa. Cmwlth.1999) (holding that a medical expert's speculative testimony was an insufficient basis for a WCJ's finding of fact). In *Hyman,* the employer's medical expert, who examined the claimant on October 6, 1995, testified that he expected that the claimant could perform a job offered by her employer by mid-November of 1995. The WCJ found the testimony of the employer's medical expert to be credible and suspended the claimant's partial disability benefits effective November 15, 1995. The Board reversed the suspension of benefits on the basis that the testimony of the

---

**9.** In *American Contracting Enterprises,* the WCJ credited the testimony of the claimant and his medical witnesses that the claimant had an ongoing disability. The WCJ granted the claimant's claim petition and awarded benefits, and the Board affirmed. On appeal to this Court, citing *Ricks,* we noted that the WCJ may determine the chronological length of a claimant's disability based on a claimant's testimony. Thus, we concluded that the claimant's testimony constituted substantial evidence to support the Board's finding of ongoing disability and affirmed the Board's order.

**10.** In *Ricks,* after surgery, the claimant's doctor released the claimant to work without restriction although she still suffered from residual pain and swelling in her knee. The claimant attempted to return to work for her employer but was informed that she was no longer an employee. Subsequently, the claimant accepted a job with another employer, earning less than her pre-injury wage. At the WCJ's hearing, the claimant testified on her own behalf and her doctor testified that he released her to work without restriction even though the claimant still experienced pain and swelling in her knee. The WCJ credited the claimant's testimony that she experienced ongoing disability and rejected the testimony of the employer's medical witnesses that would have provided evidence to suspend the claimant's benefits, and determined that the claimant carried her burden of proof. The Board affirmed, and the employer appealed to this Court, arguing that, because the claimant's doctor released her to work, the record lacked substantial evidence to support the WCJ's finding that the claimant's disability was ongoing. We affirmed, concluding that the claimant carried her burden of proving her ongoing disability through her testimony even though she was released for work and upholding the WCJ's authority to determine chronological length of disability.

employer's medical expert was speculative. On appeal to this Court, we affirmed the Board's order, explaining that "there is no testimony by the doctor in this case that Claimant had in fact recovered as of November 15, 1995.... [The doctor's] 'expectations' are based on an assumed course of events of which [he] could have no knowledge." *Id.* at 151.

Like the medical witness in *Hyman,* Dr. Collins merely speculated that Claimant would be able to return to work. Therefore, his testimony cannot support a suspension of benefits. *Id.* Having accepted the testimony of Claimant and Dr. Collins, the WCJ had substantial, competent evidence to support his determination that Claimant continued to experience ongoing disability. Thus, the WCJ's findings are binding on appeal, *Casne,* and his decision is consistent with the holding in *Innovative Spaces.*

Accordingly, we affirm.

### ORDER

AND NOW, this 12th day of February, 2014, the February 4, 2013 order of the Workers' Compensation Appeal Board is affirmed.