Elaine P. Wurtenberg,         :
          Petitioner      :
                                :
         v.            :  No. 2293 C.D. 2015
                                :  Submitted: May 6, 2016
Workers' Compensation      :
Appeal Board (Tenet Health   :
System Hahnemann, LLC),    :
          Respondent    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: July 20, 2016

Elaine P. Wurtenberg (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that amended her employer's notice of compensation payable (NCP) to include posttraumatic stress disorder (PTSD) for a closed period of time and, thereafter, terminating benefits based on her full recovery. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ). Claimant contends that the record evidence did not establish her full recovery and, further, that Tenet Health System Hahnemann, LLC (Employer) should have been penalized for not investigating her PTSD. We affirm.

In 2002, Claimant, a registered nurse, began working in Employer's coronary care unit. On June 15, 2012, she sustained injuries when a patient grabbed her by the neck and began choking her. Pursuant to a temporary NCP, Employer accepted liability for a sprain or strain to the neck, right shoulder and

right upper arm. After Claimant underwent further testing, Employer amended the temporary NCP, identifying Claimant's shoulder injury as a rotator cuff tear. The temporary NCP converted to a NCP on October 1, 2012.

On January 31, 2013, Claimant filed a review petition alleging the NCP should be amended to include PTSD. Employer denied the material allegations, and on November 8, 2013, filed a termination petition with respect to Claimant's physical injuries. On November 11, 2013, Claimant filed a penalty petition alleging that Employer had not properly investigated her claim that her work injury also included PTSD. Employer's termination petition was not consolidated with Claimant's review and penalty petitions.[1]

At the WCJ hearing, Claimant testified she was caring for a 94-year old patient, who had been placed in restraints because he became aggressive when nurses attempted to stop him from pulling out his heart monitor. When the patient's physician ordered the removal of the restraints, Claimant attempted to contact the physician to discuss the order, which she questioned. In the meantime, the patient removed one of the restraints. Claimant then removed the other restraints and placed him in a chair. Because the patient was agitated, Claimant remained in the room with him. When Claimant attempted to stop the patient from pushing his chair to the door, he rose from his chair and put his hands around her neck. "After a moment, [she] was able to get one hand off. But when [she] got the one hand off, the other hand squeezed tighter." Notes of Testimony (N.T.), 6/24/2013, at 9-10; Reproduced Record at 22a-23a (R.R. ___). Claimant feared for

---

[1] Whether Claimant has recovered from her physical injuries is the subject of separate litigation and not before the Court.

her life. She does not remember screaming but was told she did so. Two doctors and a nurse pulled the patient off of her.

Claimant continued to work until the end of her shift approximately five hours later. Because Claimant reported pain in her neck and shoulder, the nursing director asked Claimant if she wanted to go to the emergency room. Claimant declined treatment at that time.

Claimant had a pre-scheduled vacation the following week, during which she experienced physical pain as well as anxiety symptoms. Because she thought she was having a heart attack, she went to the emergency room. She was advised that the chest pain was not heart-related but could be attributable to PTSD caused by the patient's attack.

Claimant reported this episode to the nursing director, who informed her that Employer "provides free counseling sessions for their employees." N.T., 6/24/2013 at 14; R.R. 27a. Employer's human resources department scheduled an appointment with Brian Stemetzki, a licensed social worker. Claimant saw him weekly, beginning in 2012.[2] Claimant told Stemetzki that she had flashbacks and nightmares of the incident; felt depressed, irritable, angry and fearful; and was apprehensive in crowds for fear of being watched or chased. Her sessions with Stemetzki alleviated her symptoms, but she decided to seek additional treatment from a psychiatrist. In January 2013, she began treatment with Herman T. Barb, M.D., who prescribed medication for depression, anxiety and insomnia. Claimant continues to see Dr. Barb every three months. On a scale from one to one hundred

---

[2] She also went to "Worknet," which she described as Employer's "workers' comp doctor's office." N.T., 6/24/2013, at 15; R.R. 28a. At Worknet, Claimant underwent testing on her neck and shoulder. Eventually, she had surgery on her shoulder.

3

percent, she described herself as 85% improved. N.T., 11/6/2013, at 23; R.R. 257a.

Claimant expressed anger at her co-workers who "didn't do enough" to help her during the attack. N.T., 6/24/2013, at 28; R.R. 41a. She testified that seeing a nurse in uniform makes her anxious. Because she has "lost the drive to care for others," she is unable to return to work. *Id*. at 52; R.R. 65a. Nevertheless, Claimant was able to be in a hospital in California when her grandson was born. She explained that she is not afraid of nurses; rather, it is the thought of returning to nursing that triggers her anxiety.

In support of her review petition, Claimant presented the deposition testimony of her psychiatrist, Dr. Barb, who diagnosed her with PTSD. He stated that the typical treatment for PTSD is antidepressant and antianxiety medication. Because Claimant suffers insomnia, he has also prescribed sleep medication. Dr. Barb testified that Claimant experienced severe anxiety from the patient attack and over time she became more isolated, not wanting to leave the safety of her home. This, in turn, caused depression. Dr. Barb testified that because Claimant did not seek psychiatric care for six months, it took "longer then to turn [her] around." N.T., 7/17/2013, at 18; R.R. 86a.

Dr. Barb testified that Claimant has improved significantly but continues to suffer PTSD in "a more milder state." *Id*. at 35; R.R. 103a. He reported that she does not meet the criteria for a PTSD diagnosis at this time but has not fully recovered. She continues to need treatment. Claimant attempted to drive to the hospital where she had previously worked as a "kind of test if she could go to work, and she was not able to." *Id*. at 57; R.R. 125a. Dr. Barb does

4

not believe Claimant will ever be able to return to work with Employer, but eventually she may be able to return to nursing in another location.

Employer presented the deposition of Robert V. DeSilverio, M.D., a psychiatrist, who conducted an independent medical examination (IME) of Claimant on April 17, 2013. He stated that Claimant became tearful when recounting the incident with the patient. She had been cleared to return to modified duty in March 2013 but stated she was afraid to return and "they don't care." N.T., 8/28/2013, at 27; R.R. 154a. Her reluctance to return to work seemed to be based on her belief that the hospital administration did not pay sufficient attention to her condition.

Dr. DeSilverio stated that Claimant exhibited no evidence of anxiety or depression during the IME, and he found no support for a diagnosis of PTSD. He stated that crying and anger are not common symptoms of PTSD. He explained that any person subjected to genuine stress will experience symptoms, but this does not rise to a stress disorder.

Dr. DeSilverio addressed Dr. Barb's opinion that although Claimant was recovered from some elements of PTSD, the diagnosis will continue until there is a complete recovery. Dr. DeSilverio disagreed. He stated that if you sprain an ankle and cannot work, you do not stay home from work until the pain is zero. PTSD ceases to exist when its essential elements terminate. Categorically, "[t]he diagnosis goes away when the individual has a sufficient reduction in symptoms to be able to function." *Id*. at 64; R.R. 191a. If Claimant was initially disabled, that disability ended when she reached the point that she could function and work. Dr. DeSilverio opined that Claimant had reached that point by the time of the IME.

5

The WCJ found that Dr. Barb's testimony was more credible and persuasive than Dr. DeSilverio's regarding the diagnosis of PTSD. The WCJ noted that Dr. Barb had an opportunity to observe Claimant closer in time to the work incident than Dr. DeSilverio and observed Claimant over a longer period of time than Dr. DeSilverio. However, the WCJ also found that Dr. DeSilverio persuasively established that Claimant had fully recovered as of April 17, 2013. The WCJ found that Dr. DeSilverio's recovery opinion was supported by his review of her records and the results of a mental status examination. Further, Dr. Barb had conceded that by May 2013, Claimant no longer met all the requirements of a PTSD diagnosis.

Employer submitted photographs from Claimant's Facebook page into evidence. These pictures showed her smiling and participating in her son's October 2012 wedding in California and her daughter's May 2013 college graduation. It also showed her happily holding her grandson, in a hospital room, following his September 2013 birth. The WCJ found these photographs "cast doubt on [her] testimony regarding the severity of her ongoing symptoms." WCJ Decision at 13, Finding of Fact No. 8(b).

The WCJ granted Claimant's review petition and amended the NCP to include PTSD; the WCJ terminated benefits for PTSD as of April 17, 2013. The WCJ denied Claimant's penalty petition, finding Employer's contest was reasonable in light of the disputes concerning the PTSD diagnosis and its duration.

Claimant appealed to the Board. She claimed Dr. DeSilverio's opinion was not competent because he did not accept the PTSD diagnosis. The Board disagreed, noting that Dr. DeSilverio testified that even if Claimant had developed PTSD, she no longer suffered from it by the time of the IME. The

6

Board explained that an expert is competent, notwithstanding his belief that the injury did not occur, so long as he testifies, in the alternative, that "the claimant 'had made a full and complete recovery from any injury he may have sustained in the course of his employment.'" *Jackson v. Workers' Compensation Appeal Board (Resources for Human Development)*, 877 A.2d 498, 502-03 (Pa. Cmwlth. 2005) (quoting *To v. Workers' Compensation Appeal Board (Insaco, Inc.)*, 819 A.2d 1222, 1225 (Pa. Cmwlth. 2003)).

Claimant also challenged the WCJ's denial of her penalty petition, contending that Employer failed to properly investigate her work injury. The Board concluded that the WCJ's denial of penalties was within the WCJ's discretion and appropriate under the circumstances of this case.

On appeal to this Court, Claimant raises two issues.[3] First, she contends the record does not support the WCJ's finding that she had fully recovered from PTSD. Second, she claims the WCJ erred by not granting her penalty petition.

Claimant maintains that the record does not support a finding that she recovered from PTSD because Dr. DeSilverio's testimony was incompetent. The WCJ found, as fact, that she suffered PTSD, and Dr. DeSilverio opined that she never had PTSD. Employer responds that Claimant is confusing the burden of an employer in a termination petition with that of a claimant in a review petition. When litigating a termination petition, the employer is obligated to accept an injury that has previously been determined work-related. In this case, the PTSD had not

---

[3] Our review of the Board's decision is to determine whether the findings of fact are supported by substantial evidence and whether constitutional rights were violated or an error of law committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n.2 (Pa. Cmwlth. 2003).

been found a compensable injury. Claimant had the burden to prove that she suffered work-related PTSD and that it continued through the pendency of her review petition. Claimant did not meet this burden.

We begin with a review of the relevant provisions of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 72 P.S. §§1 – 1041.4, 2501 – 2708. Section 413(a) of the Act, states, in relevant part, as follows:

> A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. §771. Section 413(a) permits modification of an NCP "at any time" when an inaccuracy is discovered in the identification of an existing injury. 77 P.S. §771.[4] By contrast, a review petition is treated under Section 413(a) "as if such

---

[4] In contrast, the second paragraph of Section 413(a) of the Act permits modification of an NCP for an increase, decrease or recurrence of an injury, subject to delineated time periods. It provides:

> A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed: Provided, That, except in the case of eye injuries, no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition

**(Footnote continued on the next page . . . )**

8

petition were an original claim petition." 77 P.S. §773. The Pennsylvania Supreme Court has explained:

> When an NCP description of injury does not correctly reflect the actual injury or enumerate all of the injuries sustained in a work-related incident, Section 413(a) sets forth the procedure by which the NCP is modified. Pursuant to Section 413(a), a claimant must file a Petition to Review Notice of Compensation Payable, which is treated like a claim petition. *As in a claim petition, the claimant has the burden of proving all elements to support the claim for benefits*.

*Jeanes Hospital v. Workers' Compensation Appeal Board (Hass)*, 872 A.2d 159, 169 (Pa. 2005) (emphasis added). Whether a claimant seeks to amend an NCP to add another work injury in a review petition or in response to an employer's termination petition, the claimant must prove the additional injury. *Cinram*

---

**(continued . . . )**

is filed with the department within three years after the date of the most recent payment of compensation made prior to the filing of such petition. Where, however, a person is receiving benefits pursuant to the act of June 28, 1935 (P.L. 477, No. 193), referred to as the Heart and Lung Act, the two-year period in which a petition to review, modify, or reinstate a notice of compensation, agreement or award must be filed, shall not begin to run until the expiration of the receipt of benefits pursuant to the Heart and Lung Act: And provided further, That any payment made under an established plan or policy of insurance for the payment of benefits on account of nonoccupational illness or injury and which payment is identified as not being [workers'] compensation shall not be considered to be payment in lieu of [workers'] compensation, and such payment shall not toll the running of the Statute of Limitations: And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. §772.

*Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 582 (Pa. 2009) ("[T]he burden rests with claimants to establish the existence of additional compensable injuries giving rise to corrective amendments, regardless of the procedural context in which the amendments are asserted.").

In *Miller v. Workers' Compensation Appeal Board (Professional Technicians, Inc.)*, (Pa. Cmwlth., No. 408 C.D. 2014, filed November 10, 2014), we addressed the claimant's burden in a review petition. We explained that because a review petition must be treated as a claim petition, the following principles apply:

> [T]he burden is on the claimant to establish a right to compensation, including the burden to establish the extent and duration of disability. *Pennsylvania Uninsured Employers Guaranty Fund v. Workers' Compensation Appeal Board (Bonner and Fitzgerald)*, 85 A.3d 1109, 1115 (Pa. Cmwlth. 2014). With respect to the duration requirement, the claimant must demonstrate that the injury continues to cause disability throughout the pendency of the proceedings. *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 646 A.2d 51, 54 (Pa. Cmwlth. 1994). Accordingly, in a claim petition proceeding, an employer is free to submit evidence that a claimant had fully recovered as of a certain date, and a WCJ is free to determine the chronological length of the disability. *Ricks v. Workers' Compensation Appeal Board (Parkway Corp.)*, 704 A.2d 716, 719 (Pa. Cmwlth. 1997).

*Id.*, slip op. at 10.

Here, it was Claimant's burden to establish that her PTSD was work-related and continued through the pendency of the proceedings. Employer submitted evidence that she was fully recovered as of the date of the IME. Dr. DeSilverio testified that if Claimant suffered from PTSD, she would have exhibited symptoms of it at the IME, and she did not. He also testified that a

10

diagnosis of PTSD terminates when the patient no longer meets the required criteria. Even Dr. Barb, Claimant's expert, conceded that Claimant no longer met the criteria for a PTSD diagnosis.[5] Substantial evidence supports the WCJ's determination, and we reject Claimant's first contention of error.

In her second issue, Claimant challenges the WCJ's decision not to award penalties for Employer's failure to investigate her PTSD injury. Because Employer was aware that she was being treated for a psychiatric injury, she argues that it should have accepted the PTSD diagnosis. In support, she points to an insurance adjuster's note on July 12, 2012, advising Claimant that a psychiatric diagnosis had not yet been accepted, but acknowledging her treatment by social worker Brian Stemetzki on Employer's referral. Claimant also points to the adjuster's July 27, 2012, note stating he needed a report from Stemetzki. Claimant contends this evidence establishes that the adjuster was aware she suffered a psychiatric injury and failed to amend the NTCP to include it.

Employer counters that it did not violate the Act. In any event, the award of a penalty is within the WCJ's discretion and Claimant did not establish an abuse of that discretion. It is well established that "[t]he assessment of penalties, as well as the amount of penalties imposed, is discretionary, and absent an abuse of discretion by the WCJ, this Court will not overturn a penalty on appeal." *Westinghouse Electric Corp. v. Workers' Compensation Appeal Board (Weaver)*, 823 A.2d 209, 213 (Pa. Cmwlth. 2003).

---

[5] Dr. Barb opined that a PTSD diagnosis continues until all of the symptoms are completely alleviated. However, the WCJ did not credit this testimony.

11

An employer's duty to investigate a claim is governed by Section 406.1(a) of the Act.[6] It states, in relevant part, as follows:

> The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in section 407 or pursuant to a notice of temporary compensation payable as set forth in subsection (d), on forms prescribed by the department and furnished by the insurer.

77 P.S. §717.1(a). Claimant contends that Employer violated this section by failing to issue a NCP or a notice of compensation denial within 21 days of learning of her PTSD. We disagree. Claimant's evidence did not show that Employer was informed that she had work-related PTSD.

The fact that Employer arranged for Claimant to receive counseling from a social worker in July 2012, did not establish Employer knew or should have known Claimant had suffered a work-related injury in the nature of PTSD. Claimant testified that Employer provided free counseling to employees who had the need, whatever the cause.

The adjuster's notes acknowledged that Claimant was receiving counseling, but there is no evidence that the adjuster knew that Claimant had been diagnosed with PTSD due to the work injury. The note shows that the claim was being investigated. Indeed, the adjuster asked the counselor for a report. Claimant does not assert that one was sent. Employer has the obligation to investigate "known" injuries. Claimant fails to establish the PTSD diagnosis was "known" to

---

[6] Added by the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. §717.1(a).

12

Employer based on the adjuster's notes. In sum, Claimant did not show that the WCJ abused his discretion in declining to award a penalty.

Accordingly, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elaine P. Wurtenberg,     :
     Petitioner   :
           :
   v.        : No. 2293 C.D. 2015
           :
Workers' Compensation    :
Appeal Board (Tenet Health   :
System Hahnemann, LLC),   :
     Respondent   :

## **O R D E R**

AND NOW, this 20th day of July, 2016, the order of the Workers' Compensation Appeal Board dated October 29, 2015, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge