IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lowe's Home Centers, Inc., : 
                       Petitioner : 
                                  : 
            v. :   No. 403 C.D. 2020
                                  :   Submitted: August 21, 2020
Workers' Compensation Appeal : 
Board (Reed), : 
                    Respondent : 


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CROMPTON                FILED: December 4, 2020

Lowe's Home Centers, Inc. (Employer) petitions for review from the April 2, 2020 Order (Order) of the Workers' Compensation Appeal Board (Board) that affirmed the January 18, 2019 Workers' Compensation Judge's (WCJ) Decision, granting the Petition to Reinstate Workers' Compensation Benefits (Reinstatement Petition) and the Petition for Review of Workers' Compensation Benefits (Review Petition) filed against Employer by Michael A. Reed (Claimant) and denying the Petition for Review of Utilization Review Determination (UR Petition) filed by Employer.[1]

Claimant, who worked for Employer as a "plumbing pro," sustained a work injury on April 17, 2012, when a fork truck ran over his left foot. WCJ's Dec.

---

[1] The WCJ's determination relative to the UR Petition is not part of Employer's appeal and, thus, is not addressed any further herein.

and Order, 1/18/19, Finding of Fact (F.F.) Nos. 3, 5.a., and 5.b. Claimant was taken to the hospital and was later referred to Dr. Eckert for pain management. F.F. No. 5.b. Employer accepted Claimant's work injury, via a Notice of Compensation Payable, as fractures of the left four toes and left great toe. F.F. No. 3. Claimant missed six weeks of work after his injury but subsequently returned to work four hours per day until he was able to work a full schedule.[2] F.F. No. 5.d.

On October 30, 2017, Claimant filed a Reinstatement Petition alleging a worsening of condition as of May 29, 2012. Reproduced Record (R.R.) at 4a. On November 27, 2017, Claimant filed a Review Petition alleging an incorrect description of injury, asserting that Employer failed to acknowledge a psychological injury, which he developed as a direct result of the April 17, 2012 work injury. R.R. at 8a. The aforementioned petitions were consolidated and assigned to the WCJ for litigation and decision, and hearings were held.

## I. WCJ Decision

During his January 2, 2018 testimony before the WCJ, Claimant noted that his foot sometimes swells to the point he cannot put on his shoes or tie them, and he misses work at times due to his foot issues. F.F. No. 5.e. Claimant testified that he sees Dr. Pugh and Dr. Lippett for psychological treatment, although he does not take any medications for his psychological issues. F.F. No. 5.f. He described his psychological symptoms as sleeplessness and crying "at the drop of a hat," and

---

[2] A Supplemental Agreement was filed with the Bureau of Workers' Compensation on October 4, 2012, indicating that Claimant's benefits were suspended as of August 27, 2012. F.F. No. 4.

he testified that he does not leave his house. *Id*. Claimant stated that he does not submit any work restrictions to Employer when he misses work, that he uses Family and Medical Leave Act (FMLA)[3] leave, and that he has continued to try to work since his injury occurred. F.F. No. 5.g.

At the final hearing before the WCJ on August 14, 2018, Claimant testified that, from a mental standpoint, he could probably work, but from a physical standpoint, he was not able to do so. F.F. No. 10.a. He testified that he stopped working on April 11, 2018, (1) because he was missing multiple days of work due to pain and (2) to access his 401(k) to help with his financial situation. F.F. No. 10.c. Claimant agreed that his job with Employer remained available to him and that he had been using a "knee scooter" at work. F.F. 10.d. He also testified that the anti-depressant medication he was taking helped him and that he no longer cried without reason. F.F. No. 10.e.

Claimant submitted the April 17, 2018 deposition testimony of Dr. Pugh. F.F. No. 6. Dr. Pugh testified that he first saw Claimant on December 5, 2017, and that Claimant is "a very troubled man who seemed to be very down and depressed." F.F. No. 6.b. Dr. Pugh noted that Claimant had not had any prior psychological history or treatment. *Id*. He noted that Claimant would start weeping while talking and that Claimant's foot injury correlated to his major depressive symptoms. F.F. No. 6.d. He diagnosed Claimant with general anxiety disorder and depressive disorder based upon a medical condition. *Id*. Dr. Pugh determined that Claimant's diagnoses emanated from the time of his work injury. *Id*. He determined

---

[3] 29 U.S.C. §§2601-2654.

3

that Claimant was psychologically disabled as of April 13, 2018, and opined that Claimant would be better off if he did not have the constant stress of having to go to work. F.F. No. 6.g. At his April 13, 2018 appointment, Claimant informed Dr. Pugh that he had submitted his resignation at work and that his primary care physician had prescribed Zoloft for him. F.F. No. 6.f. Dr. Pugh recommended Claimant continue with psychotherapy but Claimant declined. F.F. No. 6.h. Dr. Pugh confirmed that he saw Claimant a total of three times. F.F. No. 6.i. He agreed that Claimant's anxiety probably slightly pre-dated his work injury but that the work injury made the anxiety worse. F.F. No. 6.j.

Claimant also submitted the April 10, 2018 deposition transcript of Dr. Eckert. F.F. No. 7. Dr. Eckert diagnosed Claimant with left foot neuropathic pain secondary to traumatic injury. F.F. No. 7.d. As of his most recent visit with Dr. Eckert, on March 6, 2018, Claimant was diagnosed with left foot crush injury with chronic neuropathic pain/complex regional pain syndrome. F.F. No. 7.k. and 7.l. Dr. Eckert opined that Claimant had not fully recovered from his work injury. F.F. No. 7.l. Dr. Eckert continues to prescribe a compound topical cream for Claimant to help decrease his nerve sensitivity. F.F. No. 7.m. Dr. Eckert agreed that she has allowed Claimant to return to work in some capacity while treating him but that she has never seen a complete recovery from complex regional pain syndrome. F.F. No. 7.o.

Employer presented the deposition testimony of Dr. Noble, taken on May 23, 2018. F.F. No. 8. Dr. Noble saw Claimant on January 12, 2018, and reviewed Claimant's medical records, as well as the testimony from Dr. Eckert. F.F.

No. 8.b. and 8.e. Dr. Noble agreed that Claimant is not fully recovered from his work injury, but he did not believe Claimant has any nerve injury associated with it. F.F. No. 8.m. and 8.n.

Employer also presented the deposition testimony of Dr. Royer, who has a psychological and neuropsychological assessment practice. F.F. No. 9.a. He evaluated Claimant on April 26, 2018. F.F. No. 9.b. Dr. Royer opined that, while Claimant has appropriate emotional reactions to his situation, he does not meet the criteria for a mental health diagnosis relative to his work injury. F.F. No. 9.j. He did not believe Claimant required any psychological treatment and saw no need for any work restrictions from a psychological standpoint. F.F. No. 9.j. and 9.k.

The WCJ found Claimant credible. F.F. No. 14. In addition, the WCJ found Dr. Eckert to be more credible than Dr. Noble, primarily because Dr. Eckert has been treating Claimant on a consistent basis since 2013. F.F. No. 16. In addition, the WCJ found that, although Dr. Eckert's testimony and most recent visit with Claimant pre-dated the date upon which Claimant left his employment, Claimant was credible in his belief that he could not continue at his job due to the physical aspects of his work injury. F.F. No. 17. The WCJ credited the testimony of Dr. Pugh over that of Dr. Royer and accepted Dr. Pugh's opinion that Claimant was experiencing depression due to his work injury as of his last visit on April 13, 2018. F.F. No. 18. The WCJ also accepted Claimant's testimony that his psychological injury was not currently impacting his ability to work, but that it was the physical injury that was the cause. *Id.*

The WCJ concluded that Claimant met his burden of proof, demonstrating that his work injury should be expanded to include neuropathic pain of the left foot secondary to traumatic injury, along with a diagnosis of depression. WCJ's Dec. and Order, 1/18/19, Conclusion of Law (C.L.) No. 5. The WCJ also concluded that Claimant was entitled to reinstatement of his total temporary disability benefits as of April 11, 2018, *i.e.*, the date he stopped working due to his left foot neuropathic pain. C.L. 6.

Employer appealed to the Board.

## II. The Board's Opinion

In an opinion dated April 2, 2020, the Board affirmed the WCJ's Decision and Order on the grounds that the WCJ found Claimant credible and found Claimant's medical witnesses more credible than Employer's medical witnesses. Accordingly, the Board noted that the WCJ has "complete authority over questions of credibility, conflicting medical evidence and evidentiary weight and is free to accept, in whole or in part, the testimony of any witness, including medical witnesses." Bd. Op. at 8 (citing *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703 (Pa. Cmwlth. 1995)). "Determinations of credibility and the weight to be accorded evidence are the prerogative of the WCJ, not the Board." Bd. Op. at 8 (citing *Vols v. Workmen's Comp. Appeal Bd. (Alperin, Inc.)*, 637 A.2d 711 (Pa. Cmwlth. 1994)).

In addition, the Board opined that, despite Employer's argument otherwise, Dr. Pugh's opinion was not legally incompetent because he, in fact,

6

unequivocally stated that Claimant suffered from depression due to his work injury. Although Employer took umbrage with Dr. Pugh's assertion that he had "fair certainty" that the cause of Claimant's depression was the work injury, the Board noted that a doctor is not required to use "magic words," because it is only necessary that a doctor's testimony "permit a valid inference that such causation was present." Bd. Op. at 9 (citing *Pa. State Univ. v. Workers' Comp. Appeal Bd. (Rabin, Deceased)*, 53 A.3d 126 (Pa. Cmwlth. 2012)).  Here again, the Board declined to disturb the WCJ's determination relative to credibility and the weight of the evidence.  As the Board stated:  "Defendant asks us to challenge the weight of the evidence, which we cannot do."  Bd. Op. at 9 (citing *Vols,* 637 A.2d 711).

The Board further opined that the WCJ did not err by amending Claimant's work injury description to include neuropathic pain to the left foot, secondary to the work injury, and by adding a diagnosis of depression.  In both instances, the Board determined the WCJ did not err because there was substantial, competent evidence of record, in the form of competent, credible testimony from Claimant and his medical witnesses, that Claimant sustained a mental disorder due to the physical stimulus of his work injury and that the neuropathic pain in his left foot was also related.

In addition, the Board disagreed with Employer's contention that the WCJ erred by amending the work injury to include the left foot neuropathic pain where Claimant had not filed a Review Petition regarding same.  To this latter point, the Board noted that Section 413(a) of the Pennsylvania Workers' Compensation

7

Act (Act)[4] authorizes a WCJ, at any time, to modify a supplemental agreement "if it be proved that the agreement was in any material respect incorrect." Bd. Op. at 9 (citing Section 413(a) of the Act, 77 P.S. §771, and *Budd Co. v. Workmen's Comp. Appeal Bd. (Bradley)*, 601 A.2d 1322 (Pa. Cmwlth. 1992)). The Board opined: "[a]s the WCJ credited Dr. Eckert's testimony, which included her expert opinion that Claimant's neuropathic pain was part of the original injury, we discern no error for the WCJ to expand the injury description without a Review Petition." Bd. Op. at 9. Further, the Board rejected Employer's contention that the WCJ erred because it, *i.e.*, Employer, was not put on notice by Claimant as to the matter of his neuropathic pain, noting "both [Employer's] and Claimant's doctors testified that they would diagnose Claimant with neuropathic pain." Bd. Op. at 10.

The Board addressed the standard for a reinstatement of wage loss benefits after a suspension, stating, "[a]n employee seeking reinstatement following a suspension of benefits must prove that (1) through no fault of his or her own, the employee's disability, i.e., earning power, is again adversely affected by the work-related injury, and (2) the disability that gave rise to the original claim continues." Bd. Op. at 10 (citing *Bufford v. Workers' Comp. Appeal Bd. (N. Am. Telecom)*, 2 A.3d 548 (Pa. 2010)). "Where the claimant . . . returned to [his] pre-injury position with no restrictions, however, there is no presumption that [the] loss of earning power is related to the work injury[,] and the claimant must affirmatively prove that the work injury caused [his] loss of earnings." Bd. Op. at 10 (citing *Dougherty v. Workers' Comp. Appeal Bd. (QVC, Inc.)*, 102 A.3d 591 (Pa. Cmwlth. 2014)). Here again, in the present matter, the Board determined that Claimant met his burden of

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4; 2501-2710.

proof because the WCJ accepted Dr. Pugh's expert testimony that Claimant sustained a disabling work injury, and the WCJ also accepted Claimant's own testimony that he was not able to continue his job due to the physical aspects of his work injury.

As for Employer's contention that the WCJ's Decision was not reasoned as required by Section 422(a) of the Act, 77 P.S. §834, the Board discerned no reversible error by the WCJ. Section 422(a) of the Act requires that "the WCJ must render a reasoned decision containing findings of fact and conclusions of law based upon the record as a whole that clearly and concisely states and explains the rationale for the decision so that all can determine why and how a particular result was reached." Bd. Op. at 11 (citing Section 422(a) of the Act). "Nonetheless, Section 422(a) of the Act does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." Bd. Op. at 11 (citing *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191 (Pa. Cmwlth. 2006)). As the Claimant's position was supported by credited testimony from Claimant and his medical experts, and the WCJ's Decision allowed for adequate appellate review, the Board declined to disturb the WCJ's findings. Bd. Op. at 12 (citing *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043 (Pa. 2003) (where testimony is presented by deposition, some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a reasoned one which facilitates effective appellate review)).

9

Accordingly, the Board affirmed the WCJ's Decision and Order. Employer now petitions this Court for review.[5]

## III.    Arguments

## A. Employer's Arguments

Employer argues that the WCJ erred by expanding Claimant's work injury to include depression where said diagnosis was based on equivocal and legally incompetent medical testimony and was not supported by substantial evidence. Employer also argues that Claimant's Review Petition never placed it on notice that Claimant was asserting his work injury should be expanded to include left foot neuropathic pain. Employer asserts that the WCJ and the Board erred where Claimant's reasons for not working were not related to his work injury, and Employer was providing accommodations so that Claimant could continue to work, at least part time, at his regular job. Further, Employer contends that the WCJ and the Board erred by reinstating Claimant's benefits as of April 11, 2018, where the Claimant's Reinstatement Petition sought reinstatement of his benefits as of May 29, 2012, and that the WCJ's Decision was not reasoned and was not free from abuse of discretion or material legal error.

As addressed in broad terms above, Employer argues that the Board erred by affirming the WCJ's determination where Claimant's expert psychologist,

---

[5] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830 (Pa. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

10

Dr. Pugh, opined with "fair certainty" that Claimant's psychological issues were related to his work injury. Employer argues that the phrase "fair certainty" suggests that Dr. Pugh was not certain, and thus, his testimony was legally incompetent to support the expansion of Claimant's work injury to include depression. Quoting *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800, 802 (Pa. 1985), Employer argues that "'[a] medical witness must testify not that the injury or condition might have [or] possibly come from the assigned cause, but that in his or her professional opinion, the result in question did come from the assigned cause.'" Employer's Br. at 30-31. Employer further asserts that Dr. Pugh "specifically acknowledged the Claimant had anxiety that pre-dated the work injury: he stated that Claimant was 'always a worrier.'" Employer's Br. at 33. Employer, based on its own expert psychologist, Dr. Royer, asserts that Dr. Pugh's test results for Claimant "were obtained outside the standard of practice and test protection level, because he allowed Claimant to leave with the . . . test as essentially a take home exam instead of administering it in his office, thus leaving open all sorts of possibilities of how Claimant responded to the test." Employer's Br. at 34. Employer further asserts that Dr. Pugh acknowledged he did not know material parts of Claimant's history and lacked sufficient background information to render an unequivocal opinion. *Id.*

In addition, Employer argues the Board erred by affirming the WCJ where the WCJ amended Claimant's work injury to include neuropathic pain of the left foot secondary to traumatic injury, even though Claimant never filed a Review Petition seeking to amend the description of injury to include same. Employer asserts the Review Petition only alleged a psychological component to Claimant's

11

work injuries. Thus, it did not have proper notice of Claimant's intention to seek expansion of the work injury description to include left foot neuropathic pain.

Employer also contends that the Board erred by affirming the WCJ's Decision that Claimant met his burden of proof on reinstatement by determining that he was once again disabled as of April 11, 2018. Employer asserts that, in the instant case, Claimant's reasons for not working had nothing to do with his work injury, rather he stopped working in order to access funds in his 401(k) and had already stopped working prior to his last visit with Dr. Pugh on April 13, 2018. Thus, it is Employer's position that Claimant had already removed himself from work, even though his job was still available "within his restrictions." Employer's Br. at 39-40; 42. In addition, Employer argues that Claimant presented no evidence that he was once again, *i.e.*, as of April 11, 2018, totally disabled from the modified-duty position he had been working for the past five years, as it was Dr. Eckert's opinion that Claimant should be allowed to take two to four days off per month and be allowed to work his regular job while using a knee scooter. Employer's Br. at 40-41. Employer further argues that Claimant acknowledged that he never presented any restrictions to Employer when he missed time from work. Employer's Br. at 41 (citing R.R. at 52a).

In addition, Employer argues that the Board and WCJ erred by *sua sponte* reinstating Claimant's benefits as of April 11, 2018, where Claimant's initial Reinstatement Petition sought a reinstatement date of May 29, 2012. Employer's Br. at 42-43; R.R. at 4a.

Finally, Employer asserts that the WCJ did not issue a reasoned decision in accordance with the Act, as she did not articulate "some objective reasoning to facilitate appellate review." Employer's Br. at 44.

## B. Claimant's Arguments

Claimant contends that the Board and WCJ did not err. Claimant argues that the Board was correct to affirm the WCJ where the WCJ's Decision was based on the substantial competent evidence of record and satisfied the reasoned decision requirement of the Act.

Claimant avers that he stopped working on April 11, 2018, due to the pain in his foot and that he is unable to work due to that pain, even though anti-depressant medication has currently made his mental health symptoms more manageable. Claimant's Br. at 16. He asserts that the Board did not err in affirming the WCJ where the WCJ's determinations were based on Claimant's demeanor during live testimony as well as the WCJ's determination that Dr. Eckert's testimony was more credible and persuasive than Dr. Noble's testimony and that Dr. Pugh's testimony was more credible than Dr. Royer's testimony. Claimant's Br. at 18-19. Relying on *Pennsylvania State University v. Workers' Compensation Appeal Board (Rabin, Deceased)*, 53 A.3d 126, Claimant notes that "[i]t is only necessary that the doctor's testimony permit a valid inference that such causation was present," and that Employer's argument that Dr. Pugh's opinion that he was "fairly certain" Claimant's work injury caused his psychological condition was legally incompetent is without merit. Claimant's Br. at 19.

Claimant argues that the Act authorizes a WCJ to modify a supplemental agreement at any time, and the Board did not err when it rejected Employer's argument that Claimant's loss of earnings was not related to his work injury. Claimant asserts that his requests for time off were denied and that Employer failed to offer work within his physical limits, per Dr. Eckert, or accommodate his need for time off with payment of partial disability to account for his partial loss of earnings. Claimant's Br. at 20-23. Claimant finally argues that the Board was correct in its determination that the WCJ issued a reasoned decision in accordance with the Act.

## IV. Discussion

The majority of Employer's arguments in the present matter are focused on the WCJ's credibility determinations and assignment of weight to the evidence of record. However, as the Board noted in its opinion, the WCJ has "complete authority over questions of credibility, conflicting medical evidence and evidentiary weight and is free to accept, in whole or in part, the testimony of any witness, including medical witnesses." Bd. Op. at 8 (citing *Greenwich Collieries*, 664 A.2d 703). As the Board also correctly stated: "[d]eterminations of credibility and the weight to be accorded evidence are the prerogative of the WCJ, not the Board." Bd. Op. at 8 (citing *Vols*, 637 A.2d. 711).

Although Employer argues that Dr. Pugh's opinion was legally incompetent, we disagree. As Claimant asserts, and the Board acknowledges, there are no "magic words" that a doctor must use. As we stated in *PetSmart, Inc. Through Indemnity Insurance Company of North America v. Workers' Compensation Appeal*

14

*Board (Sauter)*, 219 A.3d 703 (Pa. Cmwlth. 2019), terms such as "presumption" and "indeterminate etiology" are expressions that "rise no higher than opinions suggesting that the disease might have been caused by the work-related injury and are insufficient for the purpose for which they were offered." *PetSmart*, 219 A.3d at 707 (quoting *Burneisen v. Workmen's Comp. Appeal Bd. (Polk Ctr.)*, 467 A.2d 400, 402 (Pa. Cmwlth. 1983)). However, in the present matter, the expression "fair certainty" indicates a level of confidence that is sufficient to carry the day in a context where 100% certainty is impossible, or nearly impossible, to reach.

With regard to Employer's arguments that Claimant's decision to leave his position prior to being taken off work by Dr. Pugh, and that Claimant wished to access funds in his 401(k), somehow undermine Claimant's assertions here, again, we disagree. The WCJ determined that Dr. Pugh's, and Claimant's own, testimony supported Claimant's contention that he could no longer perform his position with Employer. Thus, as we noted in *Allen v. Workers' Compensation Appeal Board (Delaware County SPCA, Inc.)*, 34 A.3d 874, 876 (Pa. Cmwlth. 2011), "[b]ecause the WCJ found that [c]laimant's condition had changed . . . such that [c]laimant could no longer perform his job with [e]mployer, the WCJ correctly reinstated [c]laimant's benefits on that date." Similarly, in the present matter, once the WCJ credited Claimant's and Dr. Pugh's testimony that Claimant was once again totally disabled, she correctly reinstated Claimant's benefits as of April 11, 2018, *i.e.*, Claimant's last day of work.[6] Further, to the extent Employer argues that this was the incorrect date because Claimant sought reinstatement as of May 29, 2012, we

---

[6] "[A] claimant's testimony alone, if found credible, is sufficient to support a reinstatement of suspended benefits." *City of Harrisburg v. Workers' Comp. Appeal Bd. (Palmer)*, 877 A.2d 555, 560 (Pa. Cmwlth. 2005).

15

see no error. The WCJ reinstated Claimant as of the date he once again began to experience total disability, *i.e.*, wage loss, which did not occur until April 11, 2018.

Further, we see no merit in Employer's argument that the Board erred in affirming the WCJ because the WCJ's Decision was not reasoned. In fact, the WCJ's Decision clearly delineated the evidence presented during the litigation of the matter and explained her reasoning for accepting or rejecting same. This, in turn, allowed the Board and this Court to engage in meaningful appellate review and met the reasoned decision requirement of the Act.

In addition, there was no error by the Board in affirming the WCJ's Decision to expand the description of Claimant's injury where the expansion was adequately supported by the credited testimony and the remainder of the evidence of record. Furthermore, to the extent Employer suggests the WCJ was not authorized to expand Claimant's injury description, where he did not specifically request the expansion as it related to his left foot neuropathy, as part of his Review Petition, we reiterate the Board's point that Section 413(a) of the Act authorizes a WCJ, at any time, to modify a supplemental agreement "if it be proved that the agreement was in any material respect incorrect." Bd. Op. at 9 (citing *Budd Co.*, 601 A.2d 1322). We are skeptical of Employer's assertion that it was not on notice of Claimant's attempt to expand the description of injury where the medical evidence makes it clear that the matter of Claimant's left foot neuropathy was addressed during litigation and was the subject of the medical testimony, including that of Employer's own medical expert.

16

## V. Conclusion

For all of the foregoing reasons, we see no basis upon which we would disturb the outcome in this matter.  Accordingly, we affirm the Order of the Board.


_____

J. ANDREW CROMPTON, Judge



Judge Fizzano Cannon did not participate in the decision of this case.

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lowe's Home Centers, Inc., :
                              Petitioner :
                                         :
                    v. : No. 403 C.D. 2020
                                           :
Workers' Compensation Appeal :
Board (Reed), :
                        Respondent :

# **O R D E R**

      **AND NOW**, this 4th day of December 2020, the Order of the
Workers' Compensation Appeal Board is **AFFIRMED**.


                                          _____
                                          J. ANDREW CROMPTON, Judge