IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patrick Mendicino,                          :
                          Petitioner        :
                                            :
          v.                                :    No.  640 C.D. 2020
                                            :    Submitted:  February 19, 2021
Workers' Compensation Appeal                :
Board (Rivers Casino and                    :
Chubb Indemnity Insurance                   :
Company),                                   :
                          Respondents       :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CROMPTON                           FILED:  May 17, 2021


          Patrick Mendicino (Claimant) petitions for review from the June 8, 2020
Order of the Workers' Compensation Appeal Board (Board) that affirmed the
workers' compensation judge's (WCJ) Decision and Order, denying the Claim
Petition for Workers' Compensation Benefits (Claim Petition), Petition for Penalties
(Penalty Petition), and Petition to Review Medical Treatment and/or Billing (Review
Medical Petition) filed by Claimant.

## I.      Background

          On May 20, 2016, Claimant filed a Claim Petition against Rivers Casino
(Employer) alleging that he sustained a work-related injury in the nature of a left

ankle strain/sprain, on October 6, 2014, when his left foot got caught under several unevenly stacked mats. Employer filed an Answer denying the material allegations raised in the Claim Petition. On October 12, 2017, Claimant filed a Review Medical Petition alleging that his medical bills remained unpaid and that his condition had worsened. He also filed a Penalty Petition, alleging Employer violated the Pennsylvania Workers' Compensation Act (Act)[1] by unilaterally stopping payment of his medical bills and by failing to issue either a Notice of Compensation Payable, a Temporary Notice of Compensation Payable, or Notice of Compensation Denial in regard to his claim. Employer denied the material averments raised in these latter two petitions as well. The matter was assigned to the WCJ who took evidence and held multiple hearings before circulating a Decision and Order on May 29, 2019.

## II. WCJ's Decision and Order

In her Decision and Order, the WCJ found as follows. Claimant testified that he worked for Employer as a cook since July 8, 2009, and that, in this role, he made salads, pizzas, and main entrees. WCJ's Dec., 5/29/19, Finding of Fact (FOF) No. 2. Claimant testified that, on October 6, 2014, he tripped and fell on a stack of mats that were approximately six inches high, while he was working in the team dining room. *Id*. "The mats were overlapped, and he fell forward[,] falling onto his chest, hitting his head, breaking his glasses, and hurting his left shoulder, elbow, and left ankle. His ankle problems have persisted." *Id*. Claimant went to the Sewickley Hospital Emergency Room and was diagnosed with an ankle sprain. *Id*. He began seeing Employer's panel physicians at Work Well, where he received physical therapy. *Id*. Claimant was released from care at Work Well in February 2015, and next received care for his left ankle by Dr. Bowman in December 2015. *Id*. Dr.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

Bowman administered an injection, but this did not help Claimant with his complaints. *Id.* Claimant treated with Dr. Wukich, and then treated with Dr. Prisk on February 15, 2016. *Id.* Both of these doctors ordered magnetic resonance imaging (MRI), and Dr. Prisk discussed surgery with Claimant. In November 2016, Claimant began treating with Dr. Conti for his left ankle and was scheduled for an MRI. *Id.* Claimant missed work from December 5, 2016, to December 12, 2016, due to his left ankle complaints. *Id.*

At the February 27, 2017 hearing in this matter, Claimant testified in regard to his out-of-pocket medical expenses, continuing left ankle problems, and Dr. Conti's proposed surgery. *Id.* Claimant testified, on February 7, 2019, that he continues to have problems with his left ankle but that he still works as a cook for Employer. *Id.* The WCJ found that Claimant is not losing any work time and is earning more than his pre-injury average weekly wage. *Id.*

On June 14, 2017, Dr. Conti gave a deposition in support of Claimant's position in this matter. FOF No. 4. Dr. Conti is board certified in orthopedic surgery and specializes in problems of the leg, ankle, and foot. *Id.* Claimant has been a patient of Dr. Conti's since 1999. Dr. Conti saw Claimant on May 8, 2014, primarily for his right foot, at that point. Claimant had a posterior tibial tendon abnormality for which he had surgery on the right, but, as the WCJ recounted Dr. Conti's testimony, Claimant "[did not] do so well." *Id.* Subsequently, Dr. Conti performed surgery "to redo the tendon transfer and some bone osteotomies." *Id.* After the May 2014 visit, Claimant next saw Dr. Conti on November 3, 2016, when he was having more pain on the left than the right. *Id.* The WCJ found that, when Dr. Conti saw Claimant in May 2014, he thought Claimant was experiencing problems with his right foot, which had led to problems with his left foot. *Id.* Dr. Conti explained that

3

he believed Claimant was born with two congenitally flat feet. *Id*. He believed that Claimant twisted his ankle at Employer and that the event either caused or exacerbated the problem with Claimant's tendon, bringing on a more rapid progression of his issues, and resulting in Claimant's current need for surgery. *Id*.

On April 4, 2018, Dr. Metcalf gave deposition testimony in this matter. Dr. Metcalf is board certified in internal medicine and retired from Work Well in 2017. He was involved in occupational medicine for 22 years prior to his retirement. FOF No. 5. On December 2, 2014, he diagnosed Claimant with a resolving left ankle sprain, resolving left elbow strain, and resolved left chest wall contusion and sprain. *Id*. Diagnostic studies showed some degenerative changes but were otherwise unremarkable. *Id*. Dr. Metcalf opined that Claimant was fully recovered. He also noted that Claimant has preexisting degenerative changes that are not work related in nature. *Id*.

Claimant attended an independent medical examination (IME) with Dr. Sferra on or about April 17, 2017. Dr. Sferra is the head of the Foot & Ankle Center at Allegheny General Hospital. FOF No. 6. On October 9, 2017, Dr. Sferra gave deposition testimony in support of a June 4, 2017 IME report he had prepared in regard to Claimant. *Id*. In recounting his review of Claimant's medical records, Dr. Sferra noted that Claimant had been seen by Dr. Wukich, who had diagnosed Claimant with acquired flatfoot disorder Stage III. *Id*. The WCJ quoted Dr. Sferra as testifying "Stage III is when it starts to become a more rigid concept so [it is] no longer kind of a reversible problem." *Id*. Dr. Sferra reviewed a June 2016 MRI that did not show any acute pathology. *Id*. He testified that he did not believe there was a relationship between the alleged work injury, as described by Claimant, and Claimant's diagnosis. *Id*. Dr. Sferra opined that Claimant's problems are unrelated

to his work injury, noting that Claimant's issues are part of a long and ongoing process that Claimant has been undergoing relative to his left ankle. Dr. Sferra opined that Claimant likely experienced an exacerbation of his preexisting condition, which eventually returned to baseline. *Id.* Dr. Sferra agreed that a posterior tibial tendon insufficiency and adult-onset flatfoot can result in pain and difficulty walking and would have an effect on someone, such as a chef, who is on his feet for an entire shift. *Id.*

The WCJ found that Claimant had not met his burden of proof in his Claim Petition "for the period of disability claimed in 2017[,][2] and the ongoing medical treatment that began in the end of 2015." FOF No. 7. The WCJ found Claimant credible as to his left foot problems. FOF No. 7.a. She also found that Claimant was credible that he had a left foot injury while working for Employer. *Id.* The WCJ further found that Claimant has problems with both feet and that he had complained of left foot problems prior to October 6, 2014. *Id.*

The WCJ found that, to the extent they differed, Dr. Sferra's opinions were more credible than Dr. Conti's on the issue of causation. FOF No. 7.c. The WCJ did not find that Dr. Metcalf's testimony assisted her in determining the issue of causation. FOF No. 7.d. The WCJ determined Claimant sustained a work injury on October 6, 2014, but that he had not met his burden of proving the treatment he began to receive in December 2015 was work-related. FOF No. 7.e. Thus, the WCJ dismissed Claimant's Claim Petition and his Review Medical Petition. *Id.* The WCJ also dismissed Claimant's Penalty Petition, stating that "[a]lthough no Bureau Documents were issued, [Employer] has paid for the immediate treatment following the October 6, 2014 injury." FOF No. 7.g.

---

[2] As noted by the WCJ, "[t]his matter involves a period of time of disability from July 11, 2017[,] until December 2, 2017." WCJ's Dec. and Order, 5/29/19, at 3.

5

The WCJ denied and dismissed Claimant's petitions in this matter, and Claimant appealed to the Board.

### III.    The Board's Opinion

In its June 8, 2020 Opinion, the Board affirmed the WCJ, opining:

> After careful review, we discern no reversible error.  The WCJ summarized the evidence and made credibility determinations.  He succinctly explained why he accepted Dr. Sferra's opinion.  Claimant asserts that both doctors agreed that Claimant suffers from a posterior tibial tendon tear and that Dr. Sferra provided no explanation why Claimant returned to a baseline condition of his pre[]existing condition.  However, Dr. Sferra did not unequivocally opine that Claimant suffered an exacerbation of the pre[]existing condition.  Even if Dr. Sferra gave an unequivocal opinion, the doctor stated that Claimant returned to baseline consistent with the medical records of Dr. Conti and Dr. Metcalf.  In other words, he agreed that Claimant was fully recovered from any left foot injury or exacerbation because Dr. Metcalf found him fully recovered.  As the WCJ's Decision allowed for adequate appellate review, we decline to disturb [her] findings.

Bd.'s Op., 6/8/20, at 6.

Claimant now petitions this Court for review of the Board's Opinion and Order.[3]

### IV.    Arguments

### A. Claimant's Arguments

Claimant argues that the Board erred when it adopted the WCJ's "inadequate and unreasoned credibility determination that [Claimant] failed to establish that his left posterior tibial tendon insufficiency was related to his work injury."  Claimant's Br. at 9.  Claimant states that Dr. Sferra opined that Claimant's underlying pain and

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830 (Pa. 2013).

6

disability would lead to difficulty walking and performing the duties of a chef, but yet, Claimant had returned to his pre-injury baseline status. Claimant's Br. at 11. Claimant adds that this opinion was based only on his prior medical history and a review of the records of Dr. Metcalf and Dr. Conti. Claimant's Br. at 11-12. Claimant argues that Dr. Sferra "provided no additional explanation on how Dr. Metcalf's and Dr. Conti's records indicate that [Claimant] had returned back to baseline. Dr. Sferra's opinion regarding [Claimant's] return to baseline is based on assumptions contrary to the record and is incompetent." Claimant's Br. at 12. Thus, Claimant contends that "the Board erred by adopting the WCJ's finding that Dr. Sferra was more credible than Dr. Conti." *Id*. Further, Claimant argues that the Board ignored the testimony of the medical experts in the present matter who opined that Claimant's injury could have resulted from trauma. Claimant's Br. at 13.

In addition, Claimant contends that the Board erred by determining Claimant did not sustain a work injury because it ignored medical testimony that Claimant "suffered a permanent change to his physiology." Claimant's Br. at 14. To this point, Claimant notes that Dr. Conti and Dr. Sferra both testified that Claimant's tibial tendon insufficiency would lead to pain and difficulty walking and limit his ability to perform his job as a chef. *Id*.

### B. Employer's Arguments

Employer states that the WCJ found the opinions of Dr. Sferra more credible than those of Dr. Conti in regard to causation and that, given that credibility determinations of the WCJ cannot be disturbed on appeal, the Board correctly affirmed the WCJ. Employer's Br. at 20.

In addition, Employer argues that, contrary to Claimant's contentions, the Board and the WCJ "clearly and methodically reviewed all expert medical testimony

7

of record." *Id.* Employer adds: "Dr. Conti's opinions were incompetent and not unequivocal. Therefore, the WCJ did not err in finding Dr. Conti's opinions to be less credible than those of Dr. Sferra, and the WCJ did not err in relying upon that credibility determination in finding that Claimant did not meet his burden." Employer's Br. at 21.

Employer further argues that Claimant mischaracterized Dr. Sferra's testimony in his argument, stating:

> While Dr. Sferra acknowledged that Claimant may have suffered an aggravation to his pre[]existing posterior tibial tendon insufficiency and long-standing pes planovalgus foot during the October 6, 2014 incident, he also opined that Claimant had since returned to baseline. As such, any ongoing pain, difficulty walking, or limited abilities Claimant experienced are unrelated to the work injury.

*Id.* Employer maintains that the Board did not err when it affirmed the WCJ's determination that Dr. Conti's opinions were less credible than Dr. Sferra's. *Id.*

Accordingly, Employer argues that the WCJ, and then the Board, properly determined Claimant did not meet his burden of proof that he sustained a work-related injury "causing the period of disability claimed in 2017, and the ongoing medical treatment that began in the end of 2015." Employer's Br. at 22. Thus, Employer requests that this Court affirm the Board's June 8, 2020 Order.

## V. Discussion

At the outset, we note that, in a claim petition, the claimant has the burden of proof "to demonstrate not only that he has sustained a compensable injury but also that the injury continues to cause disability throughout the pendency of the claim petition." *Innovative Spaces v. Workmen's Comp. Appeal Bd. (DeAngelis)*, 646 A.2d 51, 54 (Pa. Cmwlth. 1994).

8

In a workers' compensation case, the WCJ is the sole arbiter of fact. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434 (Pa. 1992). The findings of the WCJ can only be disturbed if there is no competent evidence to support the findings. *Universal Cyclops Steel Corp. v. Workmen's Comp. Appeal Bd. (Krawczynski)*, 305 A.2d 757 (Pa. Cmwlth. 1973). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). Determinations of credibility and the weight to be afforded evidence are the prerogative of the WCJ, not the Board. *Vols v. Workmen's Comp. Appeal Bd. (Alperin, Inc.)*, 637 A.2d 711 (Pa. Cmwlth. 1994).

We further note that "[a] decision is 'reasoned' for purposes of [the Act] if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003).

In the present matter, which is contingent on the medical evidence to establish causation, the WCJ provided a detailed account of the determinations of each of the medical professionals and credited Employer's medical expert, Dr. Sferra, over Claimant's doctor, Dr. Conti. In addition, "a medical expert's opinion is not rendered incompetent unless it is based solely on inaccurate information. Moreover, the fact that a medical expert does not have all of a claimant's medical records goes to the weight given the expert's testimony, not its competency." *Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.)*, 923 A.2d 1197, 1023 (Pa. Cmwlth. 2006) (internal citations omitted). Despite each party's argument to the contrary, neither Dr. Sferra's, nor Dr. Conti's, opinion was incompetent. It appears from the

9

record that both had sufficient information to reach their respective conclusions relative to Claimant's physical condition, and neither the WCJ nor the Board determined that either doctor's testimony was incompetent.[4] The critical issue was who was more credible, and the WCJ reasonably concluded it was Dr. Sferra. Credibility determinations are within the purview of the WCJ. Here, the WCJ carefully summarized the testimony of each of the witnesses and provided a clear explanation as to why she arrived at the conclusions she reached.

After examining Claimant and reviewing Claimant's medical records, Dr. Sferra testified that he did not believe there was a relationship between the alleged work injury and Claimant's diagnosis. He opined that Claimant's problems are not related to his work injury and that Claimant likely experienced an exacerbation of his preexisting condition, which eventually returned to baseline. The WCJ provided sufficient explanation of her evaluation of the evidence and the reasoning behind her finding that Dr. Sferra's opinion was more credible than Dr. Conti's. Her thorough analysis, as part of her 16-page Decision, allowed the Board, and now this Court, to exercise adequate review, per the reasoned decision requirement of the Act.

## VI.   Conclusion

The WCJ's Decision was reasoned and based on the substantial competent evidence of record. Further, there was no error of law or abuse of discretion.

---

[4] Although the WCJ did not determine that Dr. Conti's testimony was incompetent, she did state: "Dr. Conti did not have the benefits of reviewing Claimant's medical records from 2014[,] following the work injury" and that "Dr. Conti's testimony was quite limited as to his understanding of the work injury." WCJ's Dec. and Order, 5/29/19, FOF No. 7.c.v.

Accordingly, we see no basis upon which we would disturb the Board's Order affirming the WCJ.[5]


_____

J. ANDREW CROMPTON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[5] Because we affirm the denial of the Claim Petition, there is no need for us to address Claimant's Review Medical Petition, which, as the Board noted was "subsumed in Claimant's Claim Petition." Bd.'s Op., 6/8/20, at 2. Further, given the outcome as to the Claim Petition, along with the WCJ's reason for not assessing penalties, and seeing no abuse of discretion by the WCJ, we also affirm the Board's Order affirming the WCJ's denial of Claimant's Penalty Petition. *See Hough v. Workers' Comp. Appeal Bd. (AC&T Cos.)*, 928 A.2d 1173 (Pa. Cmwlth. 2007) (the assessment of penalties, as well as the amount of penalties imposed, is discretionary, and absent an abuse of discretion by the WCJ, this Court will not overturn a penalty on appeal).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patrick Mendicino,                          :
                          Petitioner        :
                                            :
          v.                                :   No.  640 C.D. 2020
                                            :
Workers' Compensation Appeal                :
Board (Rivers Casino and                    :
Chubb Indemnity Insurance                   :
Company),                                   :
                          Respondents       :

# **O R D E R**

AND NOW, this 17th day of May 2021, the June 8, 2020 Order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
J. ANDREW CROMPTON, Judge