IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Megan Bechler,                      :
                    Petitioner     :
                                    :
        v.                          : No. 950 C.D. 2020
                                    : Submitted: April 9, 2021
Kmart Corporation                   :
(Workers' Compensation              :
Appeal Board),                      :
                    Respondent      :


BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                        FILED: August 13, 2021


        Megan Bechler (Claimant) petitions this Court for review of the
September 8, 2020 Order (Order) of the Workers' Compensation Appeal Board
(Board). The Order affirmed the March 12, 2019 Decision and Order of the workers'
compensation judge (WCJ) granting Claimant's Claim Petition for Workers'
Compensation Benefits (Claim Petition) filed against Kmart Corporation
(Employer), but for a closed period of time. For the reasons that follow, we affirm
the Order of the Board.

## I.      Background and Procedural History

        On January 5, 2018, Claimant filed a Claim Petition alleging a work-
related injury to her "neck, right upper extremity," that occurred on September 6,

2017, when she lost her "grip on a heavy box and it yanked [her] body." Claim Petition at 2; Reproduced Record (R.R.) at 1a. On January 15, 2018, Employer filed an Answer denying the material averments raised in the Claim Petition. The matter was assigned to the WCJ who conducted three hearings and admitted seven exhibits presented by Claimant and three exhibits presented by Employer. After consideration of the exhibits and the testimony, the WCJ circulated her March 12, 2019 Decision and Order that included Findings of Fact (F.F.) and Conclusions of Law (C.L.).

## II.    WCJ's Decision and Order

Claimant testified at a deposition on March 6, 2018. The WCJ summarized Claimant's testimony, as follows, in her Findings of Fact.

On September 6, 2017, Claimant was working as a re-packer at Employer's distribution center. F.F. 1.a. Claimant had been working at a conveyor belt but was reassigned to a different department that day and was required to use a stepladder to retrieve items. F.F. 1.c. She was setting a box down,[1] when she felt pain in both arms.[2] *Id.* Claimant began receiving treatment from WorkHealth and was restricted from lifting anything over ten pounds on a repetitive basis. F.F. 1.d.-f. Her restrictions also included limitations on any repetitive pushing and moving.

---

[1] Specifically, Claimant asserts to this Court that

> [she] lifted and removed one box, which was light, from a stack of boxes. While lifting the next box from the stack, which was situated above her head, [she] felt a jolt in both arms. [She] did not realize how heavy the second box was until it was in mid-air, at which point the weight of the box yanked down her arms.

Claimant's Br. at 6 (citations to the record omitted).

[2] She also felt a pull in her right hamstring. However, this pain resolved three days later. F.F. 1.c.

F.F. 1.f. Claimant further testified that she experienced a sharp pain in her right arm, which ran from her shoulder to her pinky and that she first began to experience neck pain in February 2018. F.F. 1.g.-h.

Claimant was reassigned to duties such as moving inventory throughout the warehouse, completing paperwork, and other duties that did not require heavy lifting. F.F. 1.j. She received workers' compensation benefits from late September 2017 until December 6, 2017, because she was earning less than her pre-injury earnings while on light duty. F.F. 1.k. Claimant was informed that there was no light-duty beyond December 6, 2017, and someone from human resources told her she had been cleared to return to full duty. F.F. 1.l.-m. However, Claimant did not feel she was able to return to full-duty, and she had a November 24, 2017 doctor's note placing her on modified-duty restrictions. F.F. 1.m.-n. Claimant testified that she attempted to return to full-duty work but could not because she was in severe pain. F.F. 1.o. She tried to perform full-duty work for a few days until a doctor provided her a note with additional restrictions. F.F. 1.p. Claimant's legal counsel referred her to Dr. Sanjay Gupta. F.F. 1.t.

On September 4, 2018, Claimant testified at a hearing before the WCJ. The WCJ provided the following summary of this testimony. "Claimant has remained out of work since mid-December 2017." F.F. 2.a. Claimant continues to experience pain in her right arm from her neck to her pinky, with numbness in her fingertips. F.F. 2.c. Claimant has continued to treat with Dr. Gupta, and her pain level has remained the same. F.F. 2.f. Claimant felt she could return to light duty, but a light-duty position has not been made available to her. F.F. 2.i.-j. Claimant acknowledged that, in June 2017, she fell on a set of stairs but did not recall whether she injured her right elbow as a result. F.F. 2.k.

3

Claimant presented the May 2, 2018 deposition testimony of Dr. Gupta, who is a board-certified anesthesiologist and pain management specialist. F.F. 3.a. He first saw Claimant on December 19, 2017. F.F. 3.b. Based on his examination, Dr. Gupta diagnosed Claimant with cervical radiculopathy. F.F. 3.e. Dr. Gupta reviewed an electromyography (EMG) study of Claimant that had been performed on October 31, 2017. F.F. 3.i. The EMG study was negative for cervical radiculopathy. *Id.* Claimant underwent cervical magnetic resonance imaging (MRI) on December 27, 2017. F.F. 3.j. Dr. Gupta reviewed a December 19, 2017 EMG study which was interpreted as showing the existence of brachial plexopathy. F.F. 3.m. Dr. Gupta also reviewed a computerized axial tomography (CAT) scan of Claimant's cervical spine, which was performed on March 26, 2018, and which showed "marked degenerative disc space narrowing, osteophytes at C5-6 and C-7, and hypertrophy causing impingement on both existing nerves." F.F. 3.n. Dr. Gupta diagnosed Claimant with "cervical radiculopathy, facet pain syndrome related to Claimant's strain and sprain and brachial plexopathy, all of which . . . were causally related to Claimant's work incident of September 6, 2017." F.F. 3.r. On December 19, 2017, Dr. Gupta wrote a letter noting Claimant was able to perform light-duty work. F.F. 3.t. Dr. Gupta was unaware that Claimant had testified in her deposition "that her neck pain began in approximately February 2018," and he "was unaware that [C]laimant had testified in March 2018[,] that her pain radiates from her neck only into her right arm." F.F. 3.u.-v.

Employer presented the July 12, 2018 deposition testimony of Dr. Bryan DeSouza, who is board certified in neurology. F.F. 4.a. Dr. DeSouza conducted an independent medical examination (IME) of Claimant on April 13, 2018. F.F. 4.b. He found "no pathologic reflexes which would indicate evidence of

4

a nerve problem, either a pinched nerve, radiculopathy, brachial plexopathy, mononeuropathy or spinal cord injury." F.F. 4.q. He found no neurological finding to support a September 6, 2017 injury. F.F. 4.r. Dr. DeSouza found no support for a brachial plexus injury, and he found no objective support of ongoing problems relative to Claimant's reported September 6, 2017 injury. F.F. 4.t. He reviewed Claimant's EMG studies from 2017, and he reviewed a December 2017 MRI. Dr. DeSouza concluded that Claimant did not sustain an injury to her neck on September 6, 2017, because she made no complaints of neck pain at the time, nor did she complain of neck pain when she was examined six days later. F.F. 4.ee. Dr. DeSouza determined that Claimant was able to return to work without restrictions. F.F. 4ff.

Employer also presented the August 29, 2018 deposition testimony of Dr. Randall Culp, a board-certified orthopedic surgeon. F.F. 5.a. Dr. Culp conducted an IME of Claimant on November 20, 2017. F.F. 5.b. At the time of the IME, Claimant was working light duty for five hours per day. F.F. 5.f. Dr. Culp's neurological examination of Claimant from her brachial plexus to her fingertips was normal. F.F. 5.i. There were no findings to support an ongoing injury of Claimant's neck or upper extremities. F.F. 5.j. Dr. Culp reviewed Claimant's medical records and reports from her various diagnostic studies. F.F. 5.k. The doctor diagnosed Claimant with a sprain or strain of her right biceps area at her elbow that had resolved. F.F. 5.o. There were no objective findings to support Claimant's subjective complaints of pain, and Dr. Culp opined that Claimant was able to return to work without restrictions. F.F. 5.p.-q. He determined that Claimant did not require any further treatment for her September 6, 2017 work injury. F.F. 5.v. Dr.

5

Culp reviewed a March 26, 2018 cervical MRI report, which "did not reveal any acute findings but which described degenerative changes." F.F. 5.y.

After review of the testimony and documentary evidence, the WCJ found that Claimant was credible, but only to the extent that a work injury had occurred. The WCJ rejected Claimant's testimony regarding the nature and extent of the injury. F.F. 6. The WCJ rejected the testimony and opinions of Dr. Gupta to the extent they were contradicted by Dr. DeSouza and Dr. Culp, whom she found to be more credible. F.F. 7. The WCJ found "Dr. Gupta's opinions that [C]laimant sustained a neck injury is not supported by Claimant's testimony." F.F. 7.a. The WCJ further found that Dr. Gupta's opinions were not supported by the medical records. F.F. 7.c. On the other hand, the WCJ determined that Dr. DeSouza's opinions were supported by his examination of Claimant and that Dr. DeSouza thoroughly explained his opinions, which the WCJ determined to be based on sound medical reasoning. F.F. 8.a., 8.c. The WCJ found Dr. Culp to be credible because his opinions (1) were supported by his examination of Claimant, (2) were well reasoned and logical, and (3) were supported by Claimant's medical records. F.F. 9.b.-d.

The WCJ found that Claimant sustained a work injury on September 6, 2017, in the nature of a sprain or strain of the right biceps area at the elbow. F.F. 10. She also found that Claimant was fully recovered from her work injury as of the date of Dr. Culp's November 20, 2017 IME. F.F. 11. Thus, the WCJ terminated Claimants benefits as of November 20, 2017. Claimant appealed the WCJ's Decision and Order to the Board.

### III. The Board's Opinion and Order

In its Opinion and Order dated September 8, 2020, the Board affirmed the WCJ's Decision and Order, stating:

> Because the WCJ rejected the testimony of Claimant's medical expert as to the nature of the injury and purporting to establish continuing disability, and because the WCJ accepted the testimony of Dr. Culp as to the nature of the work injury and Claimant's recovery, the WCJ did not err in granting relief for a closed period followed by a termination. Rendering credibility determinations is the quintessential function of the fact finder. *Kasper v.* [*Workers' Comp. Appeal Bd. (Perloff Bros., Inc.*], 769 A.2d 1243 (Pa. Cmwlth. 2001).

Bd. Op. at 9-10; R.R. at 35a-36a. The Board added: "Claimant's arguments, while phrased as substantive assertions, are essentially a challenge to the WCJ's determinations of credibility and weight. We discern no error." Bd. Op. at 10; R.R. at 36a.

Earlier in its Opinion, the Board acknowledged that Claimant first raised an issue in her brief to the Board that she failed to raise before the WCJ, thus the issue was waived. Specifically, the Board noted Claimant contended that the WCJ never addressed the issue of whether there should have been an "open [Notice of Compensation Payable] [(]NCP[)]" due to the timing of Employer's filing of a Notice Stopping Temporary Compensation Payable (NSTCP) and Notice of Workers' Compensation Denial (NCD). Bd. Op. at 2; R.R. at 28a. However, the Board determined that Claimant's failure to raise the matter before the WCJ, and subsequent failure to raise the matter with any specificity on appeal to the Board,

resulted in waiver of the issue on appeal. Thus, the Board affirmed the WCJ's Decision and Order, and Claimant now petitions this Court for review.[3]

## IV. Arguments

## A. Claimant's Arguments

Claimant contends that Employer failed to properly stop the Notice of Temporary Compensation Payable (NTCP), thus, admitting liability for payment of Claimant's wage loss and medical benefits. Claimant's Br. at 10. Specifically, Claimant notes that Section 406.1(d)(5)(i) of the Pennsylvania Workers' Compensation Act (Act),[4] 77 P.S. §717.1(d)(5)(i), reads as follows:

> (5)(i) If the employer ceases making payments pursuant to a[n] [NTCP], a notice in the form prescribed by the [Department of Labor & Industry (Department)] shall be sent to the claimant and a copy filed with the [D]epartment, but in no event shall this notice be sent or filed later than five (5) days after the last payment.

Further, Section 406.1(d)(6), 77 P.S. §717.1(d)(6), states:

> (6) If the employer does not file a notice under paragraph (5) within the ninety-day period during which temporary compensation is paid or payable, the employer shall be deemed to have admitted liability and the [NTCP] shall be converted to a[n] [NCP].

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830 (Pa. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710. Section 406.1 was added by the Act of February 8, 1972, P.L. 25.

Accordingly, Claimant argues that Employer, here, issued an NSTCP on December 6, 2017, and that it stated that the last payment of temporary compensation was on November 18, 2017. "Thus, [Employer] failed to timely file a stopping document within five days of [the] last payment of temporary compensation, such that the October 11, 2017 Amended NTCP converted to an NCP." Claimant's Br. at 14 (emphasis omitted). Claimant further argues that

> when Section 406.1(d)(6) refers to "a notice under paragraph 5," this encompasses [Section 406.1(d)(5)] as a whole, including the employer's obligation to provide notice to the claimant that it is ceasing payment of temporary compensation, within five days of the last payment of compensation, with the failure to provide such notice resulting in an admission of liability.

Claimant's Br. at 16.

Claimant further argues that the Board erred when it determined she only first raised this issue in her brief to the Board. Claimant asserts that she submitted the Bureau of Workers' Compensation (Bureau) documents at the first hearing before the WCJ and that she raised the issue of Employer's violation in her brief to the WCJ in support of her Claim Petition. Thus, Employer was on notice of the argument, and further, "Employer addressed Claimant's argument in its brief to the WCJ, evidencing that [it] was on notice of the technical argument." Claimant's Br. at 19.

In addition, Claimant argues that what she refers to as the WCJ's "failure to address the technical argument" led to the improper termination of her benefits because the Amended NTCP recognized a work injury in the nature of a right hamstring/right bicep strain, and Employer's medical experts limited their respective descriptions of the injury to a musculoskeletal strain and sprain of the hands, elbows, and right biceps. Claimant's Br. at 20. Thus, Employer's experts

9

did not recognize all of the accepted injuries when they offered their respective opinions on Claimant's full recovery, and the WCJ erred by granting termination of Claimant's benefits. Claimant's Br. at 21.

Claimant asks this Court to "vacate and amend the [Board's] Opinion and Order to provide for an award of ongoing disability benefits" or "such other relief as may be justified under the circumstances." Claimant's Br. at 22.

## B. Employer's Arguments

Employer argues that the WCJ's credibility determinations are supported by the evidence of record and that, as factfinder, the WCJ's role is to assess credibility of witnesses and to weigh the evidence. Relying on *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434 (Pa. 1992), Employer notes that "[a] WCJ's credibility finding may not be disturbed if it is supported by substantial competent evidence of record." Employer's Br. at 16. Claimant's disagreement with the WCJ's credibility determinations and ultimate outcome of the case is of no moment.

In addition, Employer argues that Claimant failed to properly preserve her argument that the WCJ erred by not finding the work injury was accepted by Employer via an NTCP that was never rescinded. Employer contends that Claimant was required to state the particular grounds upon which her appeal was based and that merely listing the numbers of the WCJ's findings and/or conclusions with which she disagreed was not sufficient to preserve her argument in this regard. Thus, the Board correctly determined Claimant waived the issue when she failed to identify the matter of an "open NCP" on her appeal form. Employer's Br. at 32. Further, Employer maintains that Claimant failed to appeal the WCJ's Findings of Fact and Conclusions of Law relative to the description of her work injury, noting that

10

"Claimant did not specifically appeal the WCJ's Finding of Fact No. 10[,] and Conclusion[] of Law No. 2[,] in which the WCJ determined the description of the work injury was a 'strain or sprain of the right biceps area at the level of the elbow.'" Employer's Br. at 33.

Employer also contends that Claimant incorrectly argued in her appeal that the WCJ erred by failing to find the Amended NTCP should have converted to an NCP by operation of law, and thus, the burden of proof should have shifted to Employer because the injury was *de facto* accepted, when Employer did not issue its NSTCP until December 6, 2017. Employer's Br. at 33-34. Employer argues that the NSTCP was timely per the Act and that the record establishes it was issued on December 6, 2017, which was both within 90 days of issuance of the NTCP and within five days of Claimant's last benefits payment. Employer states that "Claimant testified that she received her last check on December 6, 2017,[5] the same date the [NSTCP] was issued . . . . Immediately thereafter, Claimant returned to her full[-]duty position with [] Employer with no wage loss until December 20, 2017." Employer's Br. at 34-35. Employer adds that the NSTCP and NCD are the operative Bureau documents in this matter, and the WCJ applied the correct burden of proof in reaching her determination.

Employer asks this Court to affirm the Order of the Board affirming the WCJ's Decision and Order that granted the Claim Petition for a closed period, with a subsequent termination of Claimant's benefits.

## V. Discussion

We first address Claimant's assertion that the Board and the WCJ erred by determining Employer had not failed to timely stop the NTCP, and that Employer,

---

[5] See Notes of Testimony (N.T.), 3/6/18 deposition of Claimant, at 14.

11

in fact, accepted Claimant's injury on an ongoing basis. Employer issued a medical-only NTCP on September 14, 2017, noting a date of injury of September 6, 2017, and describing the injury as a "right hamstring/right bicep strain." NTCP, Certified Record (C.R.), Item No. 13. The NTCP stated that the 90-day period began on September 6, 2017, and ended on December 4, 2017. *Id*. On October 11, 2017, Employer issued an Amended NTCP with the same date of injury and same injury description but which added an amount for Claimant's average weekly wage and weekly workers' compensation rate. The Amended NTCP noted that the 90-day period for the NTCP started September 17, 2017, and would end on December 15, 2017. Amended NTCP, C.R., Item No. 13. On December 6, 2017, Employer issued an NSTCP stating that payment of compensation would stop effective November 18, 2017. NSTCP, C.R., Item No. 13. Also, on December 6, 2017, Employer issued an NCD stating that Claimant had fully recovered as of December 5, 2017, based on Dr. Culp's November 20, 2017 report. NCD, C.R., Item No. 13. This document also noted that Employer received notice, or knew of, the alleged injury or date of Claimant's alleged disability as of September 17, 2017. *Id*.

Part of the problem for Claimant in the instant matter is that she did not properly preserve her argument in regard to the allegation of an open NCP because she did not address same in her appeal form, *i.e.*, Notice of Appeal, to the Board, and issues not raised in the appeal form are waived. *See Riley v. Workers' Comp. Appeal Bd. (DPW/Norristown State Hosp.)*, 997 A.2d 382 (Pa. Cmwlth. 2010). Arguing issues in the brief to the Board does not cure a failure to preserve same, with specificity, in the notice of appeal. *McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.)*, 903 A.2d 94 (Pa. Cmwlth. 2006). Because Claimant did not specifically raise before the Board the issue of which she now complains, it is

12

waived. Claimant argues that "because the WCJ failed to address the issue [in regard to an open NCP] in her Decision and Order, Claimant could not list [F]indings and [C]onclusions of [L]aw in the Notice of Appeal form." Claimant's Br. at 18. However, this argument fails in light of the specific provision of the Board's appeal form, which, in part, allows the party taking the appeal the opportunity to identify specific errors of law committed by the WCJ and the reasons why the decision does not conform to the Act. The form further allows the appellant the opportunity to attach a document, thus providing substantial latitude to explain the basis for the appeal. Claimant did not avail herself of this opportunity.

However, even if we had determined Claimant properly preserved her argument in this regard on appeal, we note that she, in fact, testified that her payments stopped on December 6, 2017 – that date of the NSTCP, and further, "Section 406.1 of the Act does not sanction conversion of an NTCP to an NCP for failure to file an NSTCP within five days of stopping payment." *Commc'n Test Design v. Workers' Comp. Appeal Bd. (Simpson)*, 229 A.3d 994, 999 (Pa. Cmwlth. 2020). In *Simpson*, we observed that "[t]here is no remedy stated therein for failure to comply with Section 406.1(d)(5)(i) of the Act. There is a remedy, however, for failure to file an NSTC[P] within 90 days of the filing of an NTCP." *Id.* Claimant, here, does not contend that Employer failed to file its NSTCP within 90 days of the NTCP. Claimant contends that Employer failed to file the NSTCP within five days of her last workers' compensation disability payment, and, thus, the Act provides that the NTCP converted to an NCP by operation of law. However, as we determined in *Communication Test Design*, noted above, the Act does not provide for conversion of the NTCP to an NCP solely because an employer does not file the NSTCP within five days of the last payment of benefits.

13

As for the remaining issue of whether the Board erred by affirming the WCJ in regard to her determination that the weight of the evidence supported the conclusion that Claimant's benefits should be granted for a closed period only, we see no basis for Claimant's contention. The findings of the WCJ can only be disturbed if the record lacks substantial evidence to support the WCJ's findings. *Universal Cyclops Steel Corp. v. Workmen's Comp. Appeal Bd. (Krawczynski)*, 305 A.2d 757 (Pa. Cmwlth. 1973). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703 (Pa. Cmwlth. 1995). Determinations of credibility and the weight to be afforded evidence are the prerogative of the WCJ, not the Board. *Vols v. Workmen's Comp. Appeal Bd. (Alperin, Inc.)*, 637 A.2d 711 (Pa. Cmwlth. 1994). Here, the WCJ properly evaluated the testimony of Claimant and her medical expert and the testimony of Employer's medical experts, in addition to the documentary evidence, made the requisite credibility determinations, and issued a reasoned decision explaining her Decision, per the requirement of the Act.[6] Thus, we see no error, and we see no basis upon

---

[6] We note here that because the Amended NTCP did not convert to an NCP, there is no merit in Claimant's contention that Employer was required to offer a medical opinion confirming a full recovery from the "accepted injury." *See* Claimant's Brief at 20. There was no accepted injury where Employer issued a denial within the requisite 90 days after the Amended NTCP and where the WCJ determined that Dr. Culp's diagnosis was accurate and that Claimant was fully recovered as of the date upon which Dr. Culp examined her. Thus, Employer was entitled to a termination of benefits, per the WCJ's Decision and Order. Section 406.1(d)(2)(i) of the Act, 77 P.S. §717.1(d)(2)(i), provides:

> (2) The notice of temporary compensation payable shall be sent to the claimant and a copy filed with the department and shall notify the claimant that the payment of temporary compensation **is not an admission of liability of the employer with respect to the injury which is the subject of the notice of temporary compensation payable.** The department shall, upon receipt of a notice

**(Footnote continued on next page…)**

14

which we would disturb the present outcome.  Accordingly, we affirm the Order of the Board.

## VI.    Conclusion

For the foregoing reasons, we affirm the September 8, 2020 Order of the Board.

_____
J. ANDREW CROMPTON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

of temporary compensation payable, send a notice to the claimant informing the claimant that:

(i) **the payment of temporary compensation** and the claimant's acceptance of that compensation **does not mean the claimant's employer is accepting responsibility for the injury** or that a compensation claim has been filed or commenced . . . .

(Emphasis added.)

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Megan Bechler,             :
            Petitioner    :
            :
       v.             :   No. 950 C.D. 2020
            :
Kmart Corporation             :
(Workers' Compensation      :
Appeal Board),             :
            Respondent : 

## **O R D E R**

     **AND NOW**, this 13th day of August 2021, the September 8, 2020 Order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____

J. ANDREW CROMPTON, Judge
